# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 5, 2013 Session

## JOLYN CULLUM ET AL. v. JAN MCCOOL ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section
Circuit Court for Hamilton County
No. 12C202      L. Marie Williams, Judge**

---

**No. E2012-00991-SC-R11-CV - Filed December 18, 2013**

---

The issue presented in this premises liability case is whether a store owes a duty to protect its customer from a visibly intoxicated customer who was ordered to leave the store by store employees. A store patron sued a store for negligence after she was struck and injured in the store's parking lot by a vehicle driven by another store patron. Store employees had refused to fill the other patron's medical prescriptions because they believed she was intoxicated; she became belligerent, and store employees ordered her to leave the store knowing that she was alone and would be driving her vehicle. In response to the lawsuit, the store filed a motion to dismiss, contending that it did not have a legal duty to control the intoxicated patron after she left the store. The trial judge granted the store's motion to dismiss. The Court of Appeals reversed, finding that the store owed the injured patron a duty of care to protect her from the intoxicated patron. Taking the plaintiffs' allegations as true and drawing all reasonable inferences in her favor, we hold that the foreseeability of harm and the gravity of harm to the injured patron outweighed the burden placed on the store to protect the patron against that harm. Therefore, the store patron's complaint contains sufficient allegations which, taken as true, establish that the store owed a duty of care to the injured patron. The trial court erred by granting the motion to dismiss.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed; Case Remanded to the Circuit Court for Hamilton County**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK and WILLIAM C. KOCH, JR., JJ., joined. JANICE M. HOLDER, J., filed a separate concurring and dissenting opinion.

G. Andrew Rowlett and Behnaz Sulkowski, Nashville, Tennessee, for the appellant, Wal-Mart Stores East, LP.

Amelia C. Roberts, Chattanooga, Tennessee, for the appellees, Jolyn Cullum and Andrew Cullum.

Lynda Motes Hill, Nashville, Tennessee, for the Amicus Curiae, National Federation of Independent Business Small Business Legal Center.

## OPINION

### BACKGROUND

This is an appeal of an order of dismissal based on the trial court's determination that the plaintiffs failed to allege sufficient facts in their complaint to state a cause of action. In reviewing this decision, we must presume that all allegations in the complaint are true. In January 2012, Jolyn Cullum and her husband, Andrew Cullum, sued Jan McCool, her husband, William Harry McCool, and Wal-Mart[1] in the Circuit Court for Hamilton County. The complaint alleges that on February 7, 2011, Ms. Cullum went to the Wal-Mart Super Center ("Wal-Mart") in Red Bank, Tennessee, to shop for groceries. After finishing her shopping, Ms. Cullum went to her car and began placing her groceries inside the trunk of her car. At about the same time, Ms. McCool, another Wal-Mart patron, returned to her car, which was parked across from Ms. Cullum's vehicle. After getting into her car, Ms. McCool suddenly placed her car in reverse without looking in her rearview mirror and backed directly into Ms. Cullum. Ms. Cullum was knocked over and her shopping cart landed on top of her, trapping her between her car and Ms. McCool's car. Ms. Cullum screamed for help, but Ms. McCool did not initially notice her. Finally, after bystanders alerted Ms. McCool to Ms. Cullum's plight, Ms. McCool got out of her car and attempted to move Ms. Cullum, picking up her leg in extreme positions and causing her excruciating pain.

Ms. Cullum did not know it, but Wal-Mart employees had just refused to fill Ms. McCool's medical prescriptions because they believed Ms. McCool was intoxicated. When her prescriptions were not filled, Ms. McCool became belligerent. The pharmacy employees at Wal-Mart were familiar with Ms. McCool as someone who had been in the store intoxicated on previous occasions. When the pharmacy employees ordered Ms. McCool to leave the store, they knew she was intoxicated, was alone and would be operating a motor vehicle. They did not call the police or take any further action. The Cullums contended that

---

[1] The Cullums initially sued Wal-Mart Stores, Inc. On April 4, 2012, the trial judge signed an agreed order in which the parties stipulated that the proper party is Wal-Mart Stores East, LP instead of Wal-Mart Stores, Inc. This appeal only involves the Cullums' claims against Wal-Mart and does not address the Cullums' claims against the McCools.

-2-

Wal-Mart was guilty of negligence and gross negligence for failing to protect Ms. Cullum from Ms. McCool.

Wal-Mart filed a motion to dismiss, contending that the Cullums failed to allege any facts upon which relief could be granted. Wal-Mart argued that it has no duty to call the police after an apparently intoxicated patron enters its store and then leaves after being ordered to do so by store employees. Wal-Mart also answered the complaint, asserting several affirmative defenses, including comparative fault.

The trial court granted Wal-Mart's motion to dismiss, reasoning that Wal-Mart employees had no duty to call the police, call a taxi, restrain Ms. McCool, prevent her from driving or warn its customers that she was intoxicated and might harm them. The trial court certified the ruling as a final judgment under Tenn. R. Civ. P. 54.02 and denied the Cullums' Tenn. R. Civ. P. 59.04 motion for reconsideration.

The Cullums appealed. The Court of Appeals reversed the trial court, reasoning that the trial court should have focused on Wal-Mart's duty to protect a potential plaintiff as opposed to its ability to control a third party. *Cullum v. McCool*, No. E2012-00991-COA-R3-CV, 2012 WL 5384659, at *4 (Tenn. Ct. App. Nov. 5, 2012). The appeals court determined that Wal-Mart could have restrained its visibly inebriated customer or informed the police that she had left the store. *Id*. at *5. The appeals court also ruled that Ms. Cullum's injuries were foreseeable because Wal-Mart had actual notice of a specific danger on its premises when its employees expelled the belligerent and intoxicated Ms. McCool. *Id*. The appeals court concluded that the Cullums had alleged sufficient facts to establish that Wal-Mart owed Ms. Cullum a duty to protect her from a known danger in the parking lot. *Id*. at *6.

We granted Wal-Mart's Tenn. R. App. P. Rule 11 application.

**ANALYSIS**

In this premises liability case, we must determine whether the Cullums' complaint against Wal-Mart is legally sufficient to survive Wal-Mart's motion to dismiss. Under Tenn. R. Civ. P. 12.02(6), the purpose of a motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. *Trau-Med of Am., Inc. v. Allstate Ins*., 71 S.W.3d 691, 696 (Tenn. 2002). "Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism." *Webb v. Habitat for Humanity*, 346 S.W.3d 422, 437 (Tenn. 2011). In reviewing these motions, we are required to construe the complaint liberally, presume that

all factual allegations are true and give the plaintiff the benefit of all reasonable inferences. *Id*. Only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief should a trial court grant a motion to dismiss. *Webb,* 346 S.W.3d at 426. The lower courts' legal conclusions are reviewed *de novo* without any presumption of correctness. *Id*.

In this negligence action, the Cullums were required to prove (1) a duty of care owed by Wal-Mart to Ms. Cullum; (2) a breach of the duty of care by Wal-Mart; (3) damages; (4) factual cause; and (5) proximate, or legal, cause. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). The issue we address is whether Wal-Mart owed Ms. Cullum a duty of care. This issue presents a question of law, which we review *de novo*. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).

Duty is "a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Satterfield v. Breeding Insulation Co*., 266 S.W.3d 347, 355 (Tenn. 2008). An unreasonable risk of harm arises and creates a legal duty if the foreseeability and gravity of harm caused by a defendant's conduct outweighs the burdens placed on a defendant to engage in other conduct that would prevent such harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citing Restatement (Second) of Torts § 291 (1964)). This weighing of interests, or balancing process, requires us to examine the facts alleged in the complaint. "Thus, when a claim is challenged by a Tenn. R. Civ. P. 12.03 or 12.02(6) motion . . . the court must determine, based on the facts alleged in the complaint, whether the defendant owes a duty to the plaintiff." *Satterfield*, 266 S.W.3d at 368 n. 45.

"[P]ersons do not ordinarily have a duty to act to protect others from dangers or risks except for those that they themselves have created." *Id*. at 357. However, legal duties can also arise when there is a special relationship between the parties. *See Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009); *Nichols v. Atnip*, 844 S.W.2d 655, 662 (Tenn. 1992); *Lindsey v. Miami Dev. Corp*., 689 S.W.2d 856, 859 (Tenn. 1985). These duties arise when the defendant has a special relationship with either the individual who is the source of the danger or the person who is at risk. *Giggers*, 277 S.W.3d at 364 (citing *Lindsey*, 689 S.W.2d at 860). A long-recognized special relationship, which is the focus of this case, is that between a business owner and patron.[2] *See, e.g.*, 2 Dan B. Dobbs, *The Law of Torts* § 324 (2008 Supp.) (noting that early court decisions recognized that business owners "owed affirmative duties of reasonable care to protect their customers and sometimes

---

[2] "We have previously recognized such special relationships to include those of innkeeper and guest, common carrier and passenger, possessors of land and guests, social host and guest, and those who have custody over another." *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008).

others rightfully upon their premises"); 65A C.J.S. *Negligence* § 650 (2013) ("A storekeeper must exercise ordinary care to protect his or her customers and other invitees from the wrongful or negligent acts of third persons which he or she has reasonable cause to anticipate.").

In *McClung*, we held that generally a business has a duty to take reasonable measures to protect its customers from foreseeable criminal attacks.[3] 937 S.W.2d at 899. *McClung* embraced the standard in the Restatement (Second) of Torts § 344, which provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

937 S.W.2d at 898-99.

*McClung* also cited with approval comment *f* of Section 344, which provides:

*Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take

---

[3] In *McClung*, we overruled our decision in *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975), which held that business owners had no duty to protect patrons from third-party criminal acts "unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee." 528 S.W.2d at 198.

-5-

precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

937 S.W.2d at 898. *See also Hepp v. Joe B's, Inc*., No. 01A01-9604-CV-00183, 1997 WL 266839, at *4 (Tenn. Ct. App. May 21, 1997) (noting that the Tennessee Supreme Court "embrac[ed] the rule" in Restatement (Second) of Torts § 344).

In *McClung*, we elected to "join those courts which generally impose a duty upon businesses to take reasonable measures to protect their customers from foreseeable criminal attacks." 937 S.W.2d at 899. We then considered a variety of approaches to provide guidance on when a business owes its patrons a duty of care. *Id*. at 899-902. Rejecting the stricter prior incidents rule and the broader totality of the circumstances approach, we adopted the "middle ground" rule that we termed a balancing approach.[4]

This middle-ground, or balancing approach, weighs the foreseeability of harm and the gravity of harm against the burden on the business to protect against that harm. *McClung* at 901. We recognized that a business is not the insurer of the safety of its customers, but in certain circumstances, it may be required to take reasonable steps to protect its customers against foreseeable harm. We noted that "a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would have prevented the harm." *Id*. (quoting *McCall v. Wilder*, 913 S.W.2d at 153). This balancing approach takes into account both the economic concerns of businesses and the safety concerns of customers. Sarah Stephens McNeal, Case Note, *Torts-Premises Liability-Liability of Tennessee Business Owners for Third-Party Criminal Attacks*, 68 Tenn. L. Rev. 141, 154 (2000); Hudson, 34 Tenn. B.J. at 34 ("The Court's decision [in *McClung*] strikes a sensible ground between business' economic concerns and public safety concerns."). The rule adopted in *McClung* has been applied in premises liability cases when a plaintiff is harmed by the criminal attacks of a third party. *See, e.g.*, *Giggers*, 277 S.W.3d at 365; *Staples*, 15 S.W.3d at 90-91.

---

[4] The prior incidents rule provides that before a business can be held liable for third-party conduct, there must have been prior incidents committed on or very near the premises of the business. This rule was considered too broad, insulating businesses with a "one free assault rule." *McClung*, 937 S.W.2d at 899-900. The totality of the circumstances approach has been criticized as too broad, creating an "unqualified duty to protect customers" and being even "less predictable" than the prior incidents rule. *Id.* at 900. Instead, we adopted the "middle ground" rule or balancing approach. David L. Hudson Jr., *Public Safety or Economic Burden: Competing Issues in Business Liability for Third-Party Criminal Attacks*, 34 Tenn. B.J. 18, 20 (1998) ("Hudson").

Furthermore, business owners can be liable for the accidental, negligent or intentionally harmful or criminal acts of third parties, so long as those acts are reasonably foreseeable. As noted, the Restatement (Second) of Torts § 344 provides that businesses can be liable "for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons." Comment *f* refers to whether a business "should reasonably anticipate careless or criminal conduct on the part of third persons." Under these principles, which we adopted in *McClung*, business owners can be subject to liability not only for failing to protect patrons from the reasonably foreseeable criminal acts of third parties but also for failing to protect patrons from the reasonably foreseeable negligent acts of third parties.

Other courts have recognized that the duty of business owners to provide safe premises for invitees applies to criminal and negligent acts of third parties. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1059 (Ill. 2006); *Carlisle v. Wal-Mart*, 61 P.3d 287, 289 (Utah Ct. App. 2002). The Illinois Supreme Court explained that "as the Restatement suggests, an actor typically has greater reason to anticipate negligence than to anticipate criminal misconduct, as it is generally reasonable for one to assume that a person will not violate the criminal law." *Marshall*, 856 N.E.2d at 1059 (citing Restatement (Second) of Torts § 302B, Comment *d*, at 89 (1965)).

To determine whether the facts alleged establish that Wal-Mart owed a duty of care in this case, the *McClung* balancing approach requires the weighing of the foreseeability and gravity of harm to Ms. Cullum against the burden placed on Wal-Mart to engage in conduct that would have prevented the harm. *McClung*, 937 S.W.2d at 901; *McCall*, 913 S.W.2d at 153. Assuming, as we must at this stage of the proceeding, that the Cullums' allegations are true, the harm caused by Ms. McCool was reasonably foreseeable. According to the allegations in the complaint, Wal-Mart had specific knowledge that Ms. McCool presented a threat. The Cullums contend that Wal-Mart employees "were familiar with the Defendant, [Ms.] McCool, and her habitual intoxication" and that Wal-Mart employees "were aware that she was alone and would be operating a vehicle in an intoxicated state." Taking the Cullums' allegations as true, there was "specific foreseeability" that Ms. McCool presented a threat to other patrons. *Giggers*, 277 S.W.3d at 367. According to the Cullums, she was intoxicated and acted belligerently in the store. The risk of harm presented by a belligerent, intoxicated person operating a motor vehicle is foreseeable. "It is common knowledge that drunk driving directly results in accidents, injuries and deaths." *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005). We explained:

> We need look no further than the all too common example of DUI-related accidents to appreciate the possible magnitude of harm or injury that can result from an impaired driver. Deaths and serious injuries tragically occur every day

-7-

as the result of impaired drivers who are operating motor vehicles on our roads and highways.

*Burroughs v. Magee*, 118 S.W.3d 323, 332 (Tenn. 2003).

On the other end of the balancing process, placing a 911 call to the police is not an onerous burden.[5] Case law from other jurisdictions supports the idea that under some factual circumstances, a business may have a duty to call the police to warn about impending dangers. For example, the Oklahoma Supreme Court ruled in *Taylor v. Hynson*, 856 P.2d 278 (Okla. 1993) that a restaurant could be liable for injuries caused to a patron by other patrons that the restaurant manager had recently expelled from the business for using profanity and acting in a belligerent manner. The restaurant manager explained that she asked the name-calling individuals to leave the store but did not check to see if they left the premises because she was busy assisting with serving other customers. *Id*. at 280. These name-calling patrons then assaulted another patron in the parking lot. *Id*. The court noted that there was a "factual dispute" as to whether the restaurant manager knew that a pending assault was about to occur. *Id*. at 281.

In *Edington v. A & P Enter., Inc.*, 900 P.2d 453 (Okla. Civ. App. 1994), the Oklahoma Court of Appeals ruled that it was a jury question whether a restaurant could be liable to a patron for an attack by a purse snatcher outside of the restaurant. Although there were no prior criminal incidents for the previous five years, a restaurant employee testified that she and co-workers suspected the purse snatcher to be a criminal threat and did not call the police. The court concluded that "[r]easonable people might conclude that if [employee] or her co-workers had alerted others to their suspicions, warned customers, or called the police, the assault on [the victim] would have been avoided." *Id*. at 455.

In *Philon v. Knerr*, No. E-11-011, 2012 WL 1900540 (Ohio Ct. App. May 25, 2012), a customer was struck by a vehicle driven by another customer in a convenience store parking lot. The injured customer sued the store claiming that the store was negligent for two reasons. First, the customer alleged the store was negligent for failing to provide adequate security in its parking lot. *Id*. at *1. Second, the customer alleged that a store clerk negligently failed to call the police when the driver of the vehicle had threatened the customer during an argument in the store. *Id*. The trial court granted summary judgment on

---

[5] We are not holding in this case that retailers must install the safety-screening procedures adopted by the Transportation Security Administration (TSA) for airline passengers at airports. We are not holding that retailers must ask patrons entering their businesses to submit to Breathalyzer tests. We also are not requiring retailers to conduct thorough security screenings of all patrons, similar to what fans encounter at sports stadiums or music concerts. Such procedures could impose onerous burdens on business owners.

both claims. *Id*. The appeals court affirmed with respect to the lack-of-security claim but reversed on the failure to call the police claim. *Id*. at *4-5. The appeals court held that whether threats were made in the store was a disputed issue of fact, and, therefore, the claim based on the failure of the store employee to call the police could proceed. *Id*. at *5.

The Supreme Court of California ruled that there was a jury issue as to whether a restaurant was liable in a negligence action based on its employees' failure to call 911 after witnessing a patron being attacked in its parking lot by a man who had taken a knife from the restaurant's kitchen. *Morris v. De La Torre*, 113 P.3d 1182 (Cal. 2005). The court noted that previous cases did not "prevent[] recognition of a duty to act reasonably by telephoning 911 as appropriate in order to protect invitees from ongoing crime." *Id*. at 1192. The court explained that "placing a 911 call is a well recognized and generally minimally burdensome method of seeking assistance." *Id*. at 1193.

A Michigan appeals court ruled that there was a jury question as to whether a restaurant owner was negligent when its patrons were attacked by a group of unruly persons in its parking lot. *Mills v. White Castle Sys. Inc*., 421 N.W.2d 631 (Mich. Ct. App. 1988). One of the plaintiffs' allegations was that the restaurant employees failed to call the police and failed to allow one of the patrons to use its phone to call the police regarding the threat presented by the unruly people in the parking lot. *Id*. at 632. The appeals court reasoned that the plaintiffs were not asking the restaurant or its employees to engage in self-help but "to summon the police or to allow plaintiffs' companion to summon the police." *Id*. at 634. The appeals court determined that the plaintiffs stated a claim upon which relief could be granted. *Id*.

We are not ruling that businesses or their employees must "call 911 for every blowhard drunk." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 777 (Tex. 2010). But, in some cases there may be a duty on the part of store employees to try to protect its patrons from known dangers. A reasonable factfinder could determine that the specific foreseeability of harm posed by an intoxicated, belligerent patron certainly could outweigh the minimal burdens placed on store employees to call the police or take another alternative course of action, as opposed to doing nothing.

Wal-Mart urges a different result for several reasons. Wal-Mart contends that *McClung* does not provide the proper framework, because *McClung* applies only to lack-of-security cases. This is a specious distinction, as this case is essentially a lack-of-security case. Ms. Cullum has alleged that Wal-Mart's actions failed to secure her safety in the parking lot from an intoxicated patron.

-9-

Wal-Mart contends that *McClung* is inapplicable because it applies only to foreseeable criminal attacks and that Ms. McCool's actions were not a criminal attack. We disagree. Ms. McCool's operation of a motor vehicle in an intoxicated state certainly could be considered criminal conduct[6] that had the same effect on Ms. Cullum as a bodily attack. Furthermore, as we explained earlier in discussing the Restatement (Second) of Torts § 344 and *McClung*, a business owner can be subject to liability not only for failing to protect patrons from the reasonably foreseeable criminal acts of third parties but also for failing to protect patrons from the reasonably foreseeable negligent acts of third parties.

Wal-Mart also relies on *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95 (Tenn. Ct. App. 2001), in which the Court of Appeals ruled that an employer did not have a legal duty to prevent one of its employees from driving home in an intoxicated state and injuring a third party. *Lett,* however, is distinguishable. The conduct in *Lett* occurred off-premises while the employee was off-duty, and the employer did not contribute to the employee's intoxicated state. *Id*. at 97-98. The Court of Appeals focused on the relationship between the employer and its employee. *Id*. at 100. The *Lett* court emphasized that an employer does not have a duty to protect a motorist from the actions of an off-duty employee. *Id*. at 103-04. The accident in *Lett* occurred on an interstate far away from the employer's premises, and there was no special relationship between the motorist and the restaurant. *Id*. at 98. In the case before us, the accident occurred in Wal-Mart's parking lot and there was a special relationship between Wal-Mart and its patron, Ms. Cullum. The proper focus is on the scope of Wal-Mart's duty to protect Ms. Cullum, its patron, from the danger posed to her while she was on Wal-Mart's property. Although Wal-Mart did not cause Ms. McCool to become intoxicated, this fact does not absolve Wal-Mart of its duty to protect its patrons from reasonably foreseeable harm.

Wal-Mart also relies on our decision in *West*, 172 S.W.3d at 552, in which we held that a convenience store employee has a duty not to sell gasoline to drivers "whom the

---

[6] Tenn. Code Ann. § 55-10-401 (2012) provides:

It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . or while on the premises of any shopping center . . . or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant . . . affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess. . . .
. . .

-10-

employee knows . . . to be intoxicated," but had no duty to physically restrain or otherwise prevent an intoxicated person from driving. *West,* however, is distinguishable. *West* did not involve a special relationship between the business that sold gasoline to a third party and the driver who was injured by the third party's conduct. *Id*. at 549. In contrast, Wal-Mart had a special relationship with its customer, Ms. Cullum, and therefore, it had a duty to protect her from foreseeable risks of harm on its property provided that any action that its duty may have required was not overly burdensome.

Wal-Mart argues that it did not contribute to Ms. McCool's intoxicated state and that it did not provide her with a vehicle. We agree, but assuming the Cullums' allegations are true, Wal-Mart knew that Ms. McCool was intoxicated and that she would be driving her motor vehicle in the store's parking lot;  therefore, it was reasonably forseeable that Ms. McCool posed a specific danger to other patrons.

Wal-Mart also contends that it has no legal right to detain an intoxicated person. A Connecticut court expressed concern over this very issue, writing:

> For instance, what would be the result if a business identifies an intoxicated person, but that person wishes to leave the store premises? Is the store owner to detain that person against his or her will?  Should the store owner be required to use force if the intoxicated person refuses to be assisted? Although public policy arguments favor the deterrence of drunk driving, they also favor the deterrence of detention and the use of force.

*Welton v. Ferrara*, No. CV075014334S, 2009 WL 1312569, at *1, *8 (Conn. Super. Ct. April 9, 2009). These are appropriate concerns, but our holding does not require store employees to restrain belligerent, intoxicated patrons by physical force. Nor does our holding require business owners to conduct security checks on all customers entering their stores. We are only holding that the facts alleged in the complaint and taken as true establish that Wal-Mart had a duty to protect Ms. Cullum from the reasonably foreseeable risk of harm posed by a belligerent, visibly intoxicated patron operating a motor vehicle.

"As a practical matter, a court serves as a gate-keeper and may exclude a claim only if it finds, as a matter of law, that the defendant does not owe a duty to the plaintiff." *Satterfield*, 266 S.W.3d at 368. We do not shut the gate on the Cullums' claims. But, we emphasize the limited nature of our holding, which turns in large part on its procedural posture.  There has been no discovery, no trial and no decision by a factfinder.  We are only reviewing the sufficiency of the allegations in the Cullums' complaint, which we must accept as true.  Our decision at this early stage of the case is not an evaluation of the likelihood of success on the merits of the claim.  We do not know what

either party will be able to prove when this matter is heard on the merits. We are simply holding that at this stage of the proceedings, Wal-Mart cannot show as a threshold matter of law that it did not have a duty to protect its patron, Ms. Cullum. The allegations in the Cullums' complaint, taken as true, establish that Wal-Mart owed a duty of care to protect Ms. Cullum from the harm presented by an intoxicated patron operating a motor vehicle in Wal-Mart's parking lot.

**CONCLUSION**

The trial court erred in granting Wal-Mart's motion to dismiss, because the Cullums have alleged sufficient facts in their complaint upon which relief can be granted. We reverse the judgment of the trial court, affirm the judgment of the Court of Appeals and remand to the Circuit Court for Hamilton County for further proceedings. Costs are taxed to Wal-Mart Stores East, LP, for which execution may issue, if necessary.

_____
SHARON G. LEE, JUSTICE