**Valda Bowers BANKS et al.**

**v.**

**BORDEAUX LONG TERM CARE et al.**[1]

Court of Appeals of Tennessee, at Nashville.

July 29, 2014 Session.

Dec. 4, 2014.

Application for Permission to Appeal Denied by Supreme Court Apr. 10, 2015.

---

**1.** A Tenn. R.App. P. Rule 9 appeal involving the same parties and the same action was filed in 2014 and was assigned a separate case number, No. M2014–00119–COA–R9–CV. Upon motion of the defendants, the two cases were consolidated. As this opinion explains, our ruling concerning the issues raised in the 2013 appeal renders the issues raised in the 2014 appeal moot.

Joseph K. Dughman, Nashville, Tennessee, for the appellant, Valda Bowers Banks.

Paul Jefferson Campbell, II, Catherine Jane Dundon, and Melissa S. Roberge, Nashville, Tennessee, for the appellees, Bordeaux Long Term Care, Hospital Authority of the Metropolitan Government of Nashville, and Metropolitan Government of Nashville Davidson County.

## OPINION

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

The principal issue in this appeal is whether the 2011 amendments to the Healthcare Liability Act ("HCLA") extend

the statute of limitations in Governmental Tort Liability Act ("GTLA") cases. The trial court concluded that the 2011 amendments did not extend the statute of limitations for healthcare liability claims against governmental entities and dismissed all claims against the governmental entities as time-barred. Plaintiff appealed. After this appeal was filed, this court ruled in *Harper v. Bradley Cnty.*, No. E2014–00107–COA–R9–CV, 464 S.W.3d 615, 2014 WL 5487788 (Tenn.Ct.App. Oct. 30, 2014), that the 2011 amendments to the HCLA extend the GTLA's one-year statute of limitations by 120 days when a plaintiff has complied with the pre-suit notice requirements of the HCLA, and we concur with the ruling in *Harper*. Because the plaintiff in this action complied with the pre-suit notice requirements of the HCLA and commenced this action against the governmental entities within the 120–day window, we have determined this action was commenced timely. Therefore, the plaintiff's claims against the governmental entities should not have been dismissed as time-barred. Accordingly, we reverse the dismissal of these claims and remand for reinstatement of the claims and for further proceedings consistent with this opinion.

This healthcare liability action was filed by Valda Banks ("Plaintiff"), in her capacity as Administratrix Ad Litem of the Estate of her deceased brother, Thomas Bowers. The four defendants are: (1) the Bordeaux Long Term Care facility ("Bordeaux"), where Mr. Bowers resided prior to his death; (2) the Metropolitan Hospital Authority ("Hospital Authority"), which managed and operated Bordeaux; (3) the Metropolitan Government of Nashville ("Metro"), which owned Bordeaux; and (4) Donald Vollmer, M.D., who was the primary care physician for Thomas Bowers while he resided at Bordeaux.

Because the complaint was dismissed on a Tenn. R. Civ. P. 12.02 motion, we assume the facts asserted in the complaint are true. The relevant facts, as stated in the complaint, reveal that Mr. Bowers was a resident at Bordeaux under the care of his primary care physician, Dr. Donald Vollmer, at all times material to this action. Dr. Vollmer ordered routine labwork for Mr. Bowers in May 2011, which reflected an elevated glucose level consistent with diabetes mellitus; however, over the course of the next eight months, Dr. Vollmer continued to treat Mr. Bowers without monitoring his glucose level or evaluating and treating him for diabetes. The complaint also stated that Mr. Bowers died on January 11, 2012, at Baptist Hospital from diabetic ketoacidosis leading to septic shock caused by the individual, and collective, negligent acts and omissions of Dr. Vollmer and individual staff members, nurses, doctors, and other personnel responsible for the care and treatment of Mr. Bowers, acting at all times as agents and/or employees of Bordeaux. It was also alleged that the Hospital Authority had the ultimate responsibility for Mr. Bowers and was the entity assigned the day-to-day responsibility to manage and/or operate Bordeaux. The complaint further alleged that the Hospital Authority and Metro were liable under the theory of respondeat superior for the negligent acts and omissions of their agents, servants, and employees at Bordeaux.

In order to comply with the pre-suit notice requirement of the HCLA, codified at Tenn.Code Ann. § 29–26–121, Plaintiff mailed notices of intent to file a claim to Dr. Vollmer, as well as the respective governmental entities on January 11, 2013, which was prior to the commencement of this action and before the one-year statute of limitations had lapsed. Relying on the HCLA's 120–day tolling provision, she then commenced this action by filing a

complaint on March 21, 2013, which was after the GTLA's statute of limitations but within the 120–day tolling provision.

Dr. Vollmer timely answered. All three governmental entities filed a motion to dismiss, contending the action was time-barred because the GTLA's one-year statute of limitations had lapsed and that the HCLA's tolling provision did not apply to governmental entities. Metro also contended that it was not a proper party, and, thus, it should be dismissed for that additional reason.[2]

Following a hearing in July 2013, the trial court ruled that the Hospital Authority was the only governmental entity that was a proper party. The court also ruled that the HCLA did not extend the GTLA's one-year statute of limitations, and, based on this finding, the trial court concluded the action was time-barred as to the governmental entities. Upon the request of the parties, the order was designated as a final appealable order pursuant to Tenn. R. Civ. P. 54.02, from which Plaintiff appealed.[3]

### ANALYSIS

I. THE GTLA STATUTE OF LIMITATIONS
 AND THE HCLA TOLLING PROVISION

■ The primary issue in this appeal is whether the 2011 amendments to the

HCLA, which was identified as the Medical Malpractice Act at the time,[4] and specifically its 120–day tolling provision, extends the statute of limitations under the GTLA for health care claims against governmental entities. This specific issue was recently decided by this court in *Harper v. Bradley Cnty.*, No. E2014–00107–COA–R9–CV, 464 S.W.3d 615, 2014 WL 5487788 (Tenn.Ct.App. Oct. 30, 2014). In the *Harper* decision, we concluded that the 2011 amendments to the HCLA clearly expressed the intent of the General Assembly to allow the tolling provision under the HCLA to extend the GTLA's one-year statute of limitations by 120 days when the plaintiff has satisfied the pre-suit notice requirements. *Harper*, 464 S.W.3d at 622–23, 2014 WL 5487788, at *7.

In 2011, the General Assembly amended the HCLA making the amended provisions applicable to all causes of action accruing on or after October 1, 2011. *See* 2011 Tenn. Pub. Acts. 510, §§ 8, 24. The cause of action in the case on appeal accrued in January 2012; therefore, the 2011 amendments to the HCLA apply.

As amended in 2011, the HCLA provides in relevant part:

(a) As used in this part, unless the context otherwise requires:

2. None of the defendants challenge the sufficiency of the notices, certificate of good faith, or any other filing requirements under the HCLA. *See, e.g.,* Tenn.Code Ann. §§ 29–26–101 *et. seq.*

3. The claims against Dr. Vollmer were not dismissed; thus, they remained in the trial court while this appeal proceeded. During the pendency of that appeal, Dr. Vollmer, who was the sole remaining defendant, moved to amend his answer to assert comparative fault for the first time against Bordeaux, Metro, the Hospital Authority, and a previously unnamed nurse practitioner. Dr. Vollmer's motion was granted and an amended answer was filed on September 24, 2013, "incorpo-

rat[ing] by reference" Plaintiff's allegations in the complaint pertaining to the government entities. The governmental entities challenged this ruling and were granted leave to file a Tenn. R.App. P. 9 interlocutory appeal. We discuss the issues raised in the interlocutory appeal at the conclusion of this opinion.

4. The HCLA was previously known as the Tennessee Medical Malpractice Act. Effective in 2012, Tennessee Code Annotated sections 29–26–115 to –122 and section –202 of the Medical Malpractice Act were amended to replace "medical malpractice" with "health care liability." *See* 2012 Tenn. Pub. Acts 798, §§ 7–15.

(1) *"Health care liability action"* *means* any civil action, *including claims against the state or a political subdivision thereof,* alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based; (2) *"Health care provider" means:*

(D) *The employee of a health care provider* involved in the provision of health care services, *including, but not limited to,* physicians, nurses, licensed practical nurses, advance practice nurses, physician assistants, nursing technicians, pharmacy technicians, orderlies, certified nursing assistants, technicians and *those physicians and nurses employed by a governmental health facility*[.]

Tenn.Code Ann. § 29–26–101 (emphasis added).

Prior to the 2011 amendments, there was no specific reference to "governmental entities" or their employees anywhere within the act, and it was uncertain whether the 2008 and 2009 amendments, which established, among other things, that the pre-suit notice requirements and the tolling provision were applicable to actions against governmental entities. The Tennessee Supreme Court resolved this uncertainty in *Cunningham v. Williamson Cnty. Hosp. Dist.,* 405 S.W.3d 41 (Tenn. 2013) holding:

[a]lthough the 2009 amendment to the Medical Malpractice Act "applies to all medical malpractice actions," this lan-guage does not reference the applicability of the Medical Malpractice Act to actions governed by the GTLA. The language of section 29–26–121(c) fails to evince an express legislative intent to extend the statute of limitations in GTLA cases.

*Cunningham,* 405 S.W.3d at 45–46 (footnote omitted).

The Supreme Court then held that "it is reasonable to conclude that by choosing not to use express language applying Tennessee Code Annotated section 29–26–121(c) to cases governed by the GTLA, the legislature did not intend to apply the 120–day extension to the GTLA statute of limitations." *Id.* at 46. Although *Cunningham* was decided in 2013, it is important to note that the Supreme Court did not consider the effect of the 2011 amendments in that decision.[5]

As we determined in *Harper,* the 2011 amendment to the HCLA overcame the "express language" shortcoming in the 2009 version. *Harper,* 464 S.W.3d at 620–22, 2014 WL 5487788, at *5–6. We concluded that the 2011 amendment, "for the first time, expressly [brought] governmental entities, including 'a political subdivision' of the state, within the ambit of the HCLA," and, further, expressly clarified that governmental entities fall within the definition of "health care providers," including, but not limited to, "physicians and nurses employed by a governmental health facility." *Id.* at 620–21, 2014 WL 5487788 at *5. As we further reasoned, "the language employed by the legislature [in the

---

**5.** The Supreme Court expressly noted in *Cunningham* that the General Assembly amended the Medical Malpractice Act in 2011 to modify the definition of "health care liability action" to include "claims against the state or a political subdivision thereof," and that the 2011 amendments became effective on October 1, 2011, after the complaint was filed. *Cunningham,* 405 S.W.3d at 45 n. 2. More-over, after concluding the 2011 amendments did not apply retroactively, the court stated: *"Because the 2011 amendment is not at issue in this case, we will await a more appropriate case in which to determine whether the language of the 2011 amendment clearly expresses a legislative intent to extend the statute of limitations in GTLA cases." Id.* (emphasis added).

2011 amendments] clearly expresses that GTLA defendants are within the ambit of the HCLA." *Id.* at 621, 2014 WL 5487788 at *6. We then specifically noted that new section 121(a)(1) requires pre-suit notice "to each health care provider that will be a defendant" and that new section 121(c) provides that "[w]hen notice is given to a provider as provided in this section, *the applicable statutes of limitations* and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose *applicable to that provider.*" *Id.* (emphasis in original). We also found significant that the Supreme Court had recently stated in *Rajvongs v. Wright,* 432 S.W.3d 808, 813–14 (Tenn. 2013) that the General Assembly clearly enacted the 120–day extension to offset the obligation to give pre-suit notice at least 60 days prior to filing a complaint. *Id.*

For the foregoing reasons, we concluded the 2011 amendment, codified at Tenn. Code Ann. § 29–26–101:

> clearly expresses a legislative intent to extend the statute of limitations in GTLA cases where the plaintiff has met the procedural requirements of the HCLA. This construction comports with notions of fundamental fairness and justice, and also with the Supreme Court's often-repeated "established view that disfavors the doctrine of sovereign immunity as applied to local governments." *Lucius,* 925 S.W.2d at 526; *see also Jenkins v. Loudon Cnty.,* 736 S.W.2d 603, 605–06 (Tenn.1987), *abrogated on other grounds by Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 83 (Tenn.2001), (stating that the Court "does not regard

with favor the doctrine of sovereign immunity as applied to municipal or county governments"); *Johnson v. Oman Constr. Co.,* 519 S.W.2d 782, 786 (Tenn. 1975) ("This Court does not regard with favor the doctrine of sovereign immunity as applied to municipal or county governments.").

*Harper,* 464 S.W.3d at 622–23, 2014 WL 5487788, at *7.

Having concluded that *Harper* provides a well-reasoned construction of the effect of the 2011 amendments to the HCLA, we concur with that reasoning and the conclusion that the 120–day tolling provision of the HCLA extends the statute of limitations in GTLA cases.

Plaintiff's pre-suit notice to the governmental entities was sufficient in all respects; therefore, the GTLA statute of limitations was tolled for an additional 120 days. Plaintiff commenced this action against the governmental entities within the tolling period; therefore, Plaintiff's claims against the Hospital Authority and Metro were timely filed. Accordingly, we reverse the dismissal of all claims against the governmental entities as time-barred and remand for further proceedings consistent with this opinion.

## II. MOTION TO DISMISS THE METROPOLITAN GOVERNMENT

Defendants filed a Tenn. R. Civ. P. Rule 12.02(6) motion to dismiss Metro contending the Hospital Authority was the only proper defendant. The trial court granted the motion finding that the only proper defendant was the Hospital Authority. Plaintiff contends Metro is also a proper party.[6]

---

6. The trial court ruled that the Hospital Authority was the only proper party, and the court dismissed Bordeaux as well as Metro. Plaintiff does not challenge the dismissal of her claims against Bordeaux.

Plaintiff only challenges the dismissal of Metro.

 The standards by which our courts should assess a Rule 12.02(6) motion to dismiss are well-established. *See Phillips v. Montgomery Cnty.,* 442 S.W.3d 233, 237 (Tenn.2014); *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn.2011). As stated by the Supreme Court in *Phillips v. Montgomery Cnty.*:

A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) requires a court to determine if the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); *Cullum v. McCool,* 432 S.W.3d 829, 832 (Tenn.2013). A Rule 12.02(6) motion challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn.2011). A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action." *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.,* 328 S.W.3d 850, 854 (Tenn. 2010)) (alteration in original) (internal quotation marks omitted). The resolution of such a motion is determined by examining the pleadings alone. *Id.*

In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (quoting *Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 31–32 (Tenn.2007)); *Cullum,* 432 S.W.3d at 832. A motion to dismiss should be granted only if it appears that " 'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' " *Webb,* 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l, Inc.,* 78 S.W.3d 852, 857 (Tenn.2002)). Tennessee jurisprudence

on this issue "reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits...." *Cullum,* 432 S.W.3d at 832 (quoting *Webb,* 346 S.W.3d at 437). We review a lower court's decision on such a motion de novo without any presumption of correctness. *Id.*

*Phillips,* 442 S.W.3d at 237.

The trial court's written order does not explain the basis for the trial court's determination that the Hospital Authority is the only proper defendant. However, Metro presented two alternative arguments to the trial court in support of dismissal, relying on both a municipal ordinance as well as statutory authority. We will address each in turn.

Metro relied on Tenn.Code Ann. § 7–57–301 which enabled the creation of the Hospital Authority and defines its powers. This statute provides in pertinent part:

An authority shall constitute a public body and a body corporate and politic, exercising public powers, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter, including, but not limited to, the powers to:

(9) Appoint all administrative, professional, technical and other employees; appoint legal counsel and an auditor; enter into contracts of employment with such employees and appointees and fix their compensation and terms of employment, subject to the budget controls of the creating and participating municipalities; and remove such employees or appointees;

(10) Enter into agreements with the creating municipality and participating municipalities with respect to the manner of transfer of hospital employees of such municipalities to the au-

thority and with respect to the retention by such employees of existing civil service status and accrued pension, disability, hospitalization, death, or other fringe benefits[.]

Tenn.Code Ann. § 7–57–301(9), (10).

Metro also asked the court to take judicial notice of an Intergovernmental Agreement between Metro and the Hospital Authority, approved and incorporated by the Metropolitan Council into municipal Ordinance No. 099–1577. Tenn. R. Evid. 202(b) provides that courts may also take judicial notice of other laws or ordinances upon reasonable notice to adverse parties. Plaintiff has not taken issue with the trial court's decision to consider this ordinance. Therefore, the fact the trial court took judicial notice of the ordinance that incorporated the Intergovernmental Agreement is not at issue.

■ Certified copies of the ordinance and the Intergovernmental Agreement were attached to Metro's motion for dismissal, and the Agreement spells out the relationship between the two governmental entities and the Hospital Authority's authority to manage Bordeaux. The pertinent provisions reveal that Metro leased the Bordeaux facility to the Hospital Authority, that Metro transferred the operation and control of Bordeaux to the Hospital Authority, and that Metro transferred its employees at Bordeaux to the Hospital Authority. Although Metro transferred operation and control to the Hospital Authority, Metro retained the right to provide legal services, insurance, procurement services, payroll, benefit and civil service administration, social services indigent certification, and such other services as the parties may agree from time to time. Moreover, Metro retained control over the purse strings, because, pursuant to the agreement, the Hospital Authority is required to present an annual budget to Metro and, to the extent the budgetary request is approved, Metro then transfers to the Authority those funds appropriated by the Metropolitan Council.

Metro contends it is not a proper party to this action because the Hospital Authority controls Bordeaux and is "legally responsible" for all Bordeaux employees. Metro also asserted in its appellate brief that the complaint only asserts acts of negligence against employees of the Hospital Authority, not Metro; however, we have determined this assertion is inaccurate, for the complaint expressly states in paragraph 9, *inter alia*, that "Defendants," which term includes Metro, breached the duty to follow the standard of care to Thomas Bowers, through their acts or omissions, by the:

i) Failure to provide nurses and nurse assistants sufficient in number to provide appropriate nursing care and services to each resident, including Thomas Bowers, so as to assure that Thomas Bowers received minimally adequate and necessary care;

j) Failure to adequately hire, train, supervise and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Thomas Bowers received the minimally necessary and appropriate care, treatment and services;

k) Failure of management and their agents to adequately hire, train, supervise and retain staff and/or personnel so as to assure that Thomas Bowers received the minimum necessary care to prevent harm in accordance with Defendants' policy and procedural manual;

. . .

The complaint goes on to allege that Metro knew of the existence of applicable

federal and state regulations and laws governing nursing homes and knew that the lives and health of residents such as Thomas Bowers were at risk if the regulations were not followed, and that its failure to follow the federal regulations governing nursing homes is evidence of the breach of the standard of care. Thus, contrary to Metro's assertions in its brief, the complaint does allege acts and omissions of negligence against Metro.

Although it is not alleged that Metro had direct control over the employees or services provided at Bordeaux, the complaint asserts a vast array of indirect control by Metro that could have direct consequences upon the services provided at Bordeaux. We are to construe the complaint liberally, presume all factual allegations to be true, and give Plaintiff the benefit of all reasonable inferences when considering a Rule 12.02(6) motion to dismiss. Therefore, at this stage in the proceedings we must accept as true the assertions that the failure of the Hospital Authority to provide nurses and nurse assistants sufficient in number to provide appropriate nursing care and services, the failure to adequately hire, train, supervise, and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, and nurse assistants, and the failure of management and their agents to adequately hire, train, supervise, and retain staff and/or personnel to assure that Thomas Bowers received the minimum necessary care to prevent harm was due, in part, to Metro's control over the Hospital Authority's budget and, thus, the funds available to operate the Bordeaux facility.

As noted above, the purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted, and such a motion only challenges the legal sufficiency of the complaint; it does not challenge the strength of a plaintiff's proof. *Webb*, 346 S.W.3d at 426. Having considered the allegations against Metro, we are unable to conclude that Plaintiff can prove no set of facts in support of the claims asserted that would entitle Plaintiff to relief. *See id.; see also Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn.2002). Accordingly, Metro should not have been dismissed at this stage of the proceedings.[7]

### III. THE SECOND APPEAL: DR. VOLLMER'S ALLEGATIONS OF COMPARATIVE FAULT

The order from which the first appeal was taken dismissed all defendants except for Dr. Vollmer; thus, Plaintiff's claims against Dr. Vollmer remained in the trial court while this appeal proceeded.[8] During the pendency of this appeal, Dr. Vollmer filed a motion in the trial court to amend his answer to assert comparative fault against Bordeaux, Metro, the Hospital Authority, and a previously unnamed nurse practitioner. Dr. Vollmer's motion was granted, and he filed an amended answer on September 24, 2013, "incorporat[ing] by reference" Plaintiff's allegations in the complaint pertaining to the government entities. Plaintiff then amended her complaint to, once again, assert the same claims against the three governmental entities that had been dismissed previously. Thereafter, the governmental entities were granted leave to file a Tenn. R.App. P. 9 interlocutory appeal in this court, which was consolidated with this appeal. *See Valda Bowers*

---

7. Discretionary function immunity was not raised in this appeal; thus, it has not been addressed.

8. The order dismissing all claims against all governmental entities was designated as a final appealable judgment pursuant to Tenn. R. Civ. P. 54.02.

*Banks et al. v. Bordeaux Long Term Care et al.,* No. M2014–00119–COA–R9–CV.

We have determined our rulings regarding the above issues, which reinstate Plaintiff's claims against the Hospital Authority and Metro, render moot all issues raised in the second appeal, No. M2014–00119–COA–R9–CV, and we find it unnecessary to address those issues further.

### In Conclusion

We reverse the judgment of the trial court in which it ruled that the Hospital Authority was the only proper defendant. We also reverse the judgment of the trial court in which it ruled that Plaintiff's claims under the HCLA against the governmental defendants were time-barred. Furthermore, we remand with instructions to reinstate the complaint to the extent it asserts claims against the Hospital Authority and Metro and for further proceedings consistent with this opinion.

Costs of appeal are assessed against the Hospital Authority of the Metropolitan Government of Nashville, and the Metropolitan Government of Nashville, Davidson County, Tennessee.