IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 2, 2018 Session

## JOE KING v. STATE OF TENNESSEE

**Appeal from the Chancery Court for Grundy County**
**No. 6505      Jeffrey F. Stewart, Chancellor**

_____

### No. M2018-00572-COA-R3-CV
_____

The petitioner was convicted of rape in 1988, served a six month sentence of incarceration, and successfully completed five and a half years of probation; in 2016 he was advised that he was required to register as a sex offender. After registering, he filed a petition for declaratory judgment, challenging the constitutionality of the Tennessee Sex Offender Registration and Monitoring Act of 2004, as written and as applied to him, and requested that he not be required to register as a sex offender. The court dismissed the action for failure to state a claim, and the petitioner appeals. Upon our *de novo* review, we reverse the dismissal of his as-applied challenge to the Act and remand the case for further proceedings; in all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part; Cause Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Paul D. Cross and Howell G. Clements, Monteagle, Tennessee, for the appellant, Joe King.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Dianna Baker Shew, Assistant Attorney General, for the appellee, State of Tennessee - Civil.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Joe King was convicted by a jury in February 1988 of the felony offense of rape; he was sentenced to six years imprisonment and served six months in jail with the balance served on probation. In 1994, the Tennessee Legislature enacted Public Chapter 976, sections 1-9, codified at Tennessee Code Annotated section 40-39-101, which was known as "The Sexual Offender Monitoring and Registration Act" ("The 1994 Act"). The 1994 Act created a sex offender registry ("SOR") and established a ten-year registration period for persons convicted of certain offenses. *See* 1994 Tenn. Laws Pub. Ch. 976. The 1994 Act was amended on numerous occasions, and in 2000, it was amended to provide for lifetime registration for violent sexual offenders. The 1994 Act was repealed and replaced in 2004 by Public Chapter 921, which created the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("the Act"), codified at section 40-39-201, *et. seq.* Due to his conviction for rape, which is defined as a "violent sexual offense" in section 40-39-202, Mr. King is subject to lifetime registration on the sex offender registry, pursuant to section 40-39-207(g), and other work and residential restrictions, pursuant to section 40-39-211.

Mr. King registered as a sex offender in March of 2016 and filed this action on May 17, 2016, seeking a declaration that he was not required to register as a sexual offender and was not required to move out of his home where his minor child lived. In his petition, he alleged that had never been informed that he had to register as a sex offender and that:

> Some time after the first of 2016, apparently an anonymous source notified the state that the Plaintiff had not registered under the Tennessee sexual offender and violent sexual offender registration verification and tracking act.
>
> The Plaintiff was advised recently by the state that he had to register, move out of his home occupied by the Plaintiff, his wife and children in which he had been living for more than 30 years.

Mr. King asserted that the registration requirements and the work and residential restrictions imposed by the Act violated the *ex post facto* and due process provisions of the state and federal constitutions.[1] He raised both facial and as-applied challenges to the

---

[1] He also alleged that the Act was unconstitutional on the grounds of "laches – due process – protected class and equitable estoppel" and "unconstitutional vagueness." He did not elaborate on these challenges in any amendments to the petition. The trial court did not specifically rule on these claims, and Mr. King does not raise them as an issue on appeal. We accordingly affirm the dismissal of those claims.

Act.[2] Mr. King filed two motions to amend his petition; in these motions, he sought to add the Tennessee Bureau of Investigation and its Chairman as defendants and to add an allegation that the Act delegated judicial authority to the TBI in violation of the separation of powers clause of the Tennessee Constitution.

In due course, the State of Tennessee moved to dismiss the petition, asserting that the Court did not have subject matter jurisdiction over the as-applied constitutional challenge to the Act inasmuch as Mr. King had not exhausted available administrative remedies with the Tennessee Bureau of Investigation ("TBI") pursuant to Tennessee Code Annotated sections 4-5-223(a), -224(b); that the State should be dismissed due to its sovereign immunity; and that the petition "fail[ed] to establish standing to challenge portions of the statute."

The court held a hearing on the motion to dismiss, issued an oral ruling, and subsequently entered an order placing the case on the retired docket in order to permit Mr. King to "pursue his declaratory action [to be removed from the sex offender registry] at the agency level under the Uniform Administrative Procedures Act ('UAPA') before bringing the constitutional challenge otherwise."

Mr. King then sought a declaratory order from the TBI that he did not have to register and requested termination from the Sex Offender Registry. The TBI issued two letters to Mr. King; the first stated, "We have received and reviewed your Petition for Declaratory Order …. Pursuant to Tennessee Code Annotated § 4[]-5-225(b) TBI declines to issue a declaratory order in this case." The second letter stated in pertinent part:

> The Tennessee Bureau of Investigation is in receipt of your recent letter requesting termination from the Sex Offender Registry. Our records indicate that you are registered as a violent sex offender for your conviction of RAPE. Said conviction is considered a sexually violent offense as defined in T.C.A. [§] 40-39-202(28). Tennessee Code Annotated, [section] 40-39-207(g)(1)(B) states that a person required to register shall continue to comply with the registration and quarterly monitoring requirements for the life of that person if that person has been convicted of a sexually violent offense. Therefore, you will not be eligible for removal from the Sex Offender Registry and must continue to register for life while living in Tennessee. Unless your conviction is overturned or you receive exoneration

---

[2] "A facial challenge essentially 'involves a claim that the statute fails an applicable constitutional test and should be found invalid in all applications.'" *Doe v. Cooper,* No. M2009-00915-COA-R3-CV, 2010 WL 2730583, at *3 (Tenn. Ct. App. July 9, 2010). An as-applied challenge "presumes that the statute is generally valid . . . [but] asserts that specific applications of the statute are unconstitutional." *Waters v. Farr*, 291 S.W.3d 873, 923 (Tenn. 2009).

for your sexual conviction, the TBI will not respond to any further requests for termination that you might make.

On April 25, Mr. King filed a "Notice of Appeal to Chancery Court" with the TBI and a motion in the trial court requesting:

> . . . a hearing, with full opportunity to expand the record and consider all pleadings heretofore filed, with opportunity to develop the record to support all the arguments raised. If the Court should consider that such a record must be generated at the agency level, Movant requests an order from this Court remanding the case to that agency with instructions to conduct a hearing permitting proof and other evidence and development as to all issues which had been raised by the pleadings in this cause.

The State then moved to dismiss the action a second time, asserting that it was moot inasmuch as the harm which Mr. King alleged, i.e., the limitations on his ability to live in the same house as his son, had been cured when the trial court relieved his son of the disability of minority.[3] The State also contended that the petition should be dismissed for lack of subject matter jurisdiction, lack of standing, and failure to state a claim.

Mr. King moved to amend the petition a third time, seeking to add the following allegations of harm:

> No one notified him of the requirement to register until early 2016. By then, all of his children from his second marriage had attained adulthood except for a 17 year old son. . . . Per the terms of TCA 40-39-211(c)(2), he had been required to set up a separate residence, destroying the father-son bond and effectively separating him from his wife and grandchildren as well.
>
> ***
>
> [S]ubstantial additional punitive effects remain: Mr. King cannot interact normally as a family member or as a citizen. Countless examples exist; to name a few: a person on the sex offender registry is not permitted to attend a high school graduation without written consent from the principal. [Name redacted], Petitioner's son, was scheduled to and did graduate from Grundy County High School in May of 2017. A written

---

[3] The State's motion stated that the trial court "relieved Plaintiff's child of the disability of minority via order dated September 16, 2016." That order does not appear in the record on appeal. In one of the amendments, Mr. King alleged that the child was no longer a minor.

4

request was made to the principal of that school. The principal deferred to the county superintendent of education who eventually authorized the principal to let Petitioner attend, but only with a police escort.

Petitioner and his son considered this to be so humiliating and degrading that he decided not to attend, and his son almost decided to skip his own high school graduation in solidarity with his father. Petitioner's relationships with his numerous grandchildren have been severely curtailed. He has been forced to miss their birthday parties, and he cannot take them on outings of any sort without an escort. He cannot attend their school, sports, or other extracurricular activities. A daughter-in-law died from cancer; he was forced to avoid some of the functions which attend a family death due to the presence of children, including the children of the deceased daughter-in-law and Petitioner's son. Petitioner's health problems, particularly his diabetes[,] took a drastic turn for the worse due to the stress of being placed on the sex offender registry and its attendant restrictions. He and his family members suffer near daily humiliation when an acquaintance peruses any of various smart-phone apps and discover that he is on the registry. He cannot join in for the family vacations.

Given the length of time since the 1988 conviction and the absence in the intervening years of even a suggestion of any type of impropriety, not just sexual, even a cold statistical analysis would indicate that his risk for recidivism is close to zero.

Following a hearing on August 31, 2017, the trial court entered an order on February 20, 2018, granting the three motions to amend the petition and granting the State's motion to dismiss for failure to state a claim.[4] Mr. King appeals the dismissal of his petition.

---

[4] After the August 31 hearing but before the order was entered, Mr. King filed a pleading styled "Motion to Amend Complaint to Add Additional Factual Background to Buttress "Punishment" Aspect of Ex Post Facto Factor . . ." which contains many of the same factual allegations as the motions to amend Mr. King had previously filed. Although titled a motion to amend complaint, the pleading states that it is "a long brief that covers the entire Tennessee Act that in counsel's opinion is both ambiguous, vague, technical and unconstitutional as it covers everything from where you reside to internet access." Counsel acknowledges that he has "plagiarized in total parts of [a brief submitted by one of the parties in *Doe v. Snyder*, 834 F. 3d 696 (6th Cir. 2016)], as counsel cannot improve on the research, writing, and expert testimony on statutes, recidivism, and danger to the public." To the extent that this pleading could be considered as a motion to amend, the trial court did not rule on the motion, and Mr. King does not assign error in that regard. We have reviewed the pleading and conclude that it is simply an argument of matters raised in the original petition and prior amendments and does not amend the petition in any substantive regard.

5

**II. STANDARD OF REVIEW**

The standard to be applied in ruling upon, and in reviewing, a motion to dismiss was set out in *Phillips v. Montgomery County*:

> A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) requires a court to determine if the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); *Cullum v. McCool,* 432 S.W.3d 829, 832 (Tenn. 2013). A Rule 12.02(6) motion challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn. 2011). A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action." *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.,* 328 S.W.3d 850, 854 (Tenn. 2010)) (alteration in original) (internal quotation marks omitted). The resolution of such a motion is determined by examining the pleadings alone. *Id.*

> In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (quoting *Tigg v. Pirelli Tire Corp.,* 232 S.W.3d 28, 31–32 (Tenn. 2007)); *Cullum,* 432 S.W.3d at 832. A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Webb,* 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l, Inc.,* 78 S.W.3d 852, 857 (Tenn. 2002)). Tennessee jurisprudence on this issue "reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits...." *Cullum,* 432 S.W.3d at 832 (quoting *Webb,* 346 S.W.3d at 437). We review a lower court's decision on such a motion de novo without any presumption of correctness. *Id.*

442 S.W.3d 233, 237 (Tenn. 2014).

**III. DISCUSSION**

**A. Whether the Act Violates the United States and Tennessee Constitutions' Prohibitions on *Ex Post Facto* Laws**

*Ex post facto* laws are forbidden by the constitutions of the United States and of

Tennessee. U.S. Const. art. I, § 10, cl. 1; Tenn. Const. Art. I, § 11.[5] "[T]o fall within the *ex post facto* prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' ... by altering the definition of criminal conduct or increasing the punishment for the crime ...." *State v. Pruitt*, 510 S.W.3d 398, 416-17 (Tenn. 2016) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)).

Mr. King challenges the constitutionality of the Act on *ex post facto* grounds both as written and as applied. "A facial challenge to a statute is the most difficult type of challenge to make as the 'presumption of a statute's constitutionality applies with even greater force when a facial challenge is made'[; t]hus, plaintiff bears the burden of showing that 'no set of circumstances exists under which the statute would be valid.'" *Doe v. Gwyn*, No. E2010-01234-COA-R3-CV, 2011 WL 1344996, at *9 (Tenn. Ct. App. Apr. 8, 2011) (quoting *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009)).

We observe that the Act has been upheld in numerous *ex post facto* challenges. "To date, every *ex post facto* challenge of Tennessee's statutory scheme requiring persons classified as sexual offenders to register with the TBI sex offender registry has been rejected." *Livingston v. State*, No. M2009-01900-COA-R3-CV, 2010 WL 3928634, at *6 (Tenn. Ct. App. Oct. 6, 2010) (citing *Doe v. Cooper*, No. M2009-00915-COA-R3-CV, 2010 WL 2730583 (July 9, 2010)). The United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and both the Tennessee Court of Appeals and the Tennessee Court of Criminal Appeals have upheld Tennessee's sex offender registry laws against *ex post facto* challenges. *Cooper,* 2010 WL 2730583, at *7 (citing *Smith v. Doe*, 538 U.S. 84 (2003); *Conn. Dept. of Public Safety v. Doe,* 538 U.S. 1 (2003); *Doe v. Bredesen,* No. 3:04-CV-566, 2006 WL 849849 (E.D. Tenn. Mar. 28, 2006), *aff'd* 507 F.3d 998 (6th Cir. 2007), *pet. cert. denied,* 555 U.S. 921 (2008); *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999); *Strain v. Tennessee Bureau of Investigation,* No. M2007-01621-COA-R3-CV, 2009 WL 137210 (Tenn. Ct. App. Jan. 20, 2009); *State v. Gibson,* No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 (Tenn. Crim. App. Dec. 9, 2004).

---

[5] The Tennessee Supreme Court observed in *State v. Pruitt*:

> Article 1, section 10, clause 1 [of the U.S. Constitution] provides that "[n]o State shall ... pass any ... ex post facto Law." The Tennessee Constitution in Article 1, section 11 states, "That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made."

510 S.W.3d 398, 410 (Tenn. 2016). The Court went on to hold "that the ex post facto clause of the Tennessee Constitution has the same definition and scope as the federal clause." *Id.* at 416.

In his brief on appeal, Mr. King has not identified a specific factual allegation that the Act is unconstitutional on its face; pertinent to this issue is the following statement contained as part of the prayer for relief in his motion to amend his petition:

> Plaintiff seeks to add a further demand for judgment to read as follows: That this Court hold that the residential and work restrictions statutes set forth in TCA 40-39-211 along with the registration requirements of TCA 40-39-201 et seq., especially 40-39-203 are facially in violation of the ex post facto and due process clauses of the state and U.S. Constitutions in failing to provide adequate procedures for the determination of whether or not their effect is punishment.

As noted earlier, in ruling on a motion to dismiss, the court is obliged to construe the complaint liberally and give the petitioner the benefit of all reasonable inferences; we have no such obligation where the allegations upon which the claim is based are conclusory. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (citing *Riggs v. Burson,* 941 S.W.2d 44, 48 (Tenn. 1997) ("Although we are required to construe the factual allegations in Plaintiff['s] favor, and therefore accept the allegations of fact as true, we are not required to give the same deference to conclusory allegations."). Mr. King's conclusory allegation, that the registration requirements and work restrictions are facially unconstitutional because they "fail[] to provide adequate procedures for the determination of whether or not their effect is punishment," simply does not allege facts; it is only a legal argument. Upon our *de novo* review, we conclude that the motion to dismiss was properly granted with respect to Mr. King's challenge that the Act, as written, violated the *ex post facto* provisions of the U.S. and Tennessee constitutions. We proceed to consider whether the amended petition alleged sufficient facts to state a claim that the Act is an unconstitutional *ex post facto* law as applied to Mr. King.

In *Smith v. Doe,* the U.S. Supreme Court considered an *ex post facto* challenge that the registration requirements in Alaska's sex offender registration act, as applied to the plaintiffs in that case, constituted retroactive punishment in violation of the *ex post facto* clause; the Court established a two-prong framework for the analysis:

> We must ascertain whether the legislature meant the statute to establish "civil" proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it "civil." Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

8

538 U.S. at 92 (internal citations and quotations omitted).

With respect to the first prong of the analysis, the Tennessee Supreme Court has considered the Act and concluded that "the registration requirements imposed by the sex offender registration act are nonpunitive." *Ward v. State*, 315 S.W.3d 461, 472 (Tenn. 2010). We concur, particularly in light of the Legislature's findings at section 40-39-201(b), stating in pertinent part:

> (6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive;
>
> ***
>
> (8) The general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders.

Accordingly, we proceed to address the second prong of our analysis, i.e., whether the Act "is so punitive in effect as to negate the State's intent" that it operate as "civil." *Smith v. Doe,* 538 U.S. at 92.

In *Smith v. Doe*, the United States Supreme Court utilized the factors announced in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether a civil or regulatory law was punitive in effect; in *Doe v. Gwyn,* this Court likewise recognized that those factors "have been used by courts in the arena of sex offender registration and reporting requirements." 2011 WL 1344996, at *11 (citing *Smith v. Doe,* 538 U.S. at 96). The factors are:

> (1) in its necessary operation, whether the regulatory scheme has been regarded in our history and traditions as a punishment; (2) whether the regulatory scheme imposes an affirmative disability or restraint; (3) whether the scheme promotes the traditional aims of punishment; (4) whether the scheme has a rational connection to a non-punitive purpose; or (5) whether the scheme is excessive with respect to this non-punitive purpose.

9

The *Kennedy v. Mendoza-Martinez* factors have been applied in various *ex post facto* challenges to the Act, with the courts determining that the Act's requirements and affirmative disabilities or restraints did not amount to a punishment. *See Livingston*, 2010 WL 3928634, at \*6-7; *Doe v. Cooper*, 2010 WL 2730583, at \*6-11; *Doe v. Bredesen,* No. 3:04-CV-566, 2006 WL 849849, at \*7-10; *Cutshall,* 193 F.3d at 476-477. Inasmuch as each as-applied constitutional challenge must be evaluated in light of its particular facts and circumstances, *Doe v. Cooper*, 2010 WL 2730583 at \*3, we turn to an examination of the pleadings in this particular case, reproduced in pertinent part previously in this opinion.

In his amended petition, quoted in Section I at pages 4-5, *supra*, Mr. King alleged specific facts which he asserted were evidence that the requirements and restrictions of the Act constituted punishment. Given the liberal construction we are obliged to give complaints when considering a motion to dismiss for failure to state a claim, we hold that the petition, as amended, alleges sufficient facts which, if proven, could support a holding that, as applied to Mr. King, the requirements and restrictions are not rationally connected to a non-punitive purpose or are excessive relative to that purpose. *See Kennedy*, 372 U.S. at 168-69. We therefore reverse the dismissal of Mr. King's petition with respect to his as-applied *ex post facto* challenge. Our resolution in this regard has no bearing on the merit of his claim.

### B. Due Process

In his brief on appeal, Mr. King fails to make a cogent argument in support of his contention that his due process rights were violated, and we will not make such an argument for him. The totality of Mr. King's due process argument is:

> By retroactively imposing lifetime registration, Tennessee has violated due process both by failing to provide "fair warning" at the time of the plaintiffs' criminal proceedings, and by upsetting "settled expectations" arising out of those proceedings. The fact that [the Act] reaches so far into the past and so seriously curtails plaintiffs' liberty makes its retroactive application particularly suspect. And it is beyond cavil that [the Act]'s "consequences are particularly harsh and oppressive."

(Citations omitted). Mr. King's brief fails to cite to any allegation in the petition, as amended, where he identifies what liberty interest of his has been infringed by application of the Act.[6] The failure to support an assertion of error with argument or

---

[6] We do not take constitutional challenges lightly. In spite of his failure to appropriately brief this issue, from the original petition and various amendments we have determined that the pleadings make the following allegations in which the term "due process" is used:

> Under Plaintiffs unique circumstances as set out below, the SOP amounts to punishment.

10

citation to the record, or to case law or relevant authority, constitutes a failure to preserve this issue for appellate review. *Bailey v. Champion Window Co, Tri-Cities*, 236 S.W.3d

> The punishment aspects are: . . . (3) removing a father [from his home] without a hearing and without any judicial process, violating the children of the father's love and support in violation of the children's due process rights as well as Plaintiffs and this gives the public no safety net from protection from sexual offenders; . . .
>
> \*\*\*
>
> The registration form requires the Plaintiff to disclose the following information listed below in violation of his constitutional right of privacy, due process, including the right to have his minor relatives in his home.
>
> \*\*\*
>
> The Plaintiff has had no opportunity for the TBI to present his evidence of good character, nor present any evidence of non-psychosis or likelihood of recidivism. Further, the Act gives total discretion to the TBI what to put in the record and the Act violates the due process clause and separation of powers clause of both the Tennessee and U.S. Constitutions in that an agency cannot exercise the question of constitutionality.
>
> \*\*\*
>
> The procedures for appeal of an adverse ruling by the TBI are inadequate, as the TBI is in charge of preparing the appeal record, which a citizen may not be permitted to supplement to raise equitable considerations. This violates fundamental due process.
>
> \*\*\*
>
> TCA 40-39-207(2) and (5) . . . only provide for the removal of the Plaintiff from registration and do not provide an adequate remedy concerning the Plaintiff living in the home with the minor child. Further, it would be unconstitutional for the TBI, a state executive agency, to conduct a judicial hearing. The review, if any, to Chancery Court on the record is prepared by the TBI thus depriving the Plaintiff due process, reasonable access to the Courts and the use of the Courts and the Courts inherent equitable powers. Particularly, as to preventing a minor from living with his father. The minor is not a victim of the crime.
>
> Plaintiff seeks to add a further demand for judgment to read as follows: That this Court hold that the residential and work restrictions statutes set forth in TCA 40-39-211 along with the registration requirements of TCA 40-39-201 et seq., especially 40-39-203[6] are facially in violation of the ex post facto and due process clauses of the state and U.S. Constitutions in failing to provide adequate procedures for the determination of whether or not their effect is punishment.

As we perceive these allegations, the concerns which are characterized as due process, are based on his position that the Act does not provide adequate procedures to present evidence of his character and likelihood of recidivism, issues we have addressed in our resolution of his as-applied *ex post facto* claim.

168, 173 (Tenn. Ct. App. 2007) (citing Tenn. R. App. P. 27(a)(7)(A); R. Ct. App. 6(b)). Accordingly, we affirm the trial court's dismissal of the allegations that the Act violates Mr. King's rights to due process of law.

## C. Whether the Act is an Unconstitutional Delegation of Power to the TBI

Mr. King asserts that the grant of certain authority to the TBI in the Act constitutes an unlawful delegation of power. Specifically, in the amended petition he alleged:

> The Plaintiff has had no opportunity for the TBI to present his evidence of good character, nor present any evidence of non-psychosis or likelihood of recidivism. Further, the Act gives total discretion to the TBI what to put in the record and the Act violates the due process clause and separation of powers clause of both the Tennessee and U.S. Constitutions in that an agency cannot exercise the question of constitutionality.

In his brief, Mr. King argues that the Act "advances the legislative intent poorly if at all and may in fact undermine it" because "the obligations of advancing legislative intent in complying with constitutional safeguards is … effectively dumped in the lap of the TBI, which . . . has no authority to decide constitutional attacks on its mandate, or at least ones making facial challenges."

Mr. King is correct that the TBI cannot decide facial constitutional challenges to the Act; we note that "an agency does not have the authority to determine the facial validity of a statute under the constitutional requirement of separation of powers." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 844 (Tenn. 2008) (citing Tenn. Const. art. II, § 2). "Questions of whether the *application* of a statute violates constitutional principles should be submitted to the agency through a petition for a declaratory order before any action is brought in the Chancery Court." *Colonial Pipeline Co.* 263 S.W.3d at 846 (citing Tenn. Code Ann. § 4-5-225(b)).[7] The record makes clear that Mr. King sought a declaratory order with the TBI, raising a constitutional challenge to the Act, and the TBI did not issue the requested order. Hence, his concerns regarding the

---

[7] The Tennessee Supreme Court has held that "the test for determining whether a statute is an unlawful delegation is whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." *Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997). Taken in its entirety, among other things, the Act imposes responsibilities on the TBI to collect certain biographical information on each offender (section 40-39-206(d)), to maintain the sex offender registry (section 40-39-204), to report current registry information to the Federal Bureau of Investigation, as required by federal law (sections 40-39-206(a) & (b)), to consider requests for termination of registration requirements (section 40-39-207). These responsibilities are appropriate guidelines and provide sufficient standards to enable the TBI to carry out the legislative intent of the Act expressed at section 40-39-201(b).

constitutionality of the Act, as applied to him, will be addressed through the trial court's consideration of his *ex post facto* claim on remand.

## IV. CONCLUSION

For the foregoing reasons, we reverse the dismissal of Mr. King's claim that the registration requirement and residential and work restrictions in the Act violate the constitutional prohibitions on *ex post facto* laws, as applied to him; we affirm the dismissal of all remaining claims; the case will be remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

13