# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 1, 2016 Session

## SANDRA KAY CLARY v. DEIDRA A. MILLER, ET AL.

**Appeal from the Circuit Court for Putnam County**
**No. 2016-CV-17      Jonathan L. Young, Judge**
_____

**No. M2016-00794-COA-R3-CV – Filed August 8, 2017**
_____

This appeal concerns the dismissal of a health care liability action for noncompliance with the Health Care Liability Act, specifically Tennessee Code Annotated § 29-26-121 (Supp. 2016).  Before filing this action, the plaintiff gave timely written pre-suit notice of her health care liability claim, including the required medical authorizations, to all potential defendants.  But when she filed her complaint, the plaintiff failed to provide copies of the medical authorizations as required by statute.  Both defendants filed motions to dismiss based on the missing documents.  The trial court determined that the plaintiff had substantially complied with the statute and that the defendants were not prejudiced by the omission.  Even so, the court dismissed the complaint with prejudice after concluding that strict compliance with the statute was required when the defendant was a governmental entity.  Upon review, we conclude that substantial compliance with the documentation requirement in Tennessee Code Annotated § 29-26-121(b) is sufficient even when the defendant is a governmental entity.  Thus, we reverse the dismissal of the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY J. BENNETT and RICHARD H. DINKINS, JJ., joined.

Brandon J. Cox and Sarah J. Cripps, Smithville, Tennessee, for the appellant, Sandra Kay Clary.

Cynthia A. Wilson, Cookeville, Tennessee, for the appellees, Deidra A. Miller, and Cookeville Regional Medical Center Authority.

# OPINION

## I.

On January 15, 2015, Sandra Kay Clary was admitted to the intensive care unit at Cookeville Regional Medical Center ("CRMC") with a diagnosis of "sepsis related to community acquired pneumonia, acute renal failure, and hyponatremia." According to Ms. Clary, a nurse at CRMC, Deidra Miller, negligently administered a Lovenox injection, causing complications that necessitated extensive medical treatment and resulted in pain and suffering and permanent disfigurement.

On September 4, 2015, Ms. Clary provided written notice of her health care liability claim to both CRMC and Ms. Miller, along with a HIPAA-compliant medical authorization.[1] *See* Tenn. Code Ann. § 29-26-121(a)(1) (2012). On January 20, 2016, Ms. Clary filed this health care liability action against CRMC and Ms. Miller (collectively, "Defendants") in the Circuit Court for Putnam County, Tennessee. Ms. Clary also submitted a certificate of good faith and an affidavit certifying that pre-suit notice, including HIPAA-compliant medical authorizations, was served on Defendants as required by statute. *Id.* §§ 29-26-121(a)(4), -122 (2012). Copies of the pre-suit notice and proof of service were attached to the affidavit. Although HIPAA-compliant medical authorizations were provided to Defendants with the pre-suit notice, copies of the authorizations were not filed with the complaint.

Defendants challenged Ms. Clary's compliance with the pre-suit notice statute by filing Rule 12.02 motions to dismiss based on the omitted medical authorizations. Tenn. R. Civ. P. 12.02(1). Ms. Clary filed the missing authorizations on March 23, 2016.

On April 7, 2016, the court dismissed the complaint with prejudice. The court determined that Ms. Clary only substantially complied with the statute and that she failed to demonstrate extraordinary cause for her noncompliance. The court found that Defendants were not prejudiced by Ms. Clary's substantial compliance, but held that strict compliance was required because CRMC was a governmental entity.

## II.

Ms. Clary contends that the trial court erred in dismissing her complaint with prejudice in light of her substantial compliance with Tennessee Code Annotated § 29-26-

---

[1] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.). HIPAA prohibits the disclosure of protected health information without a written medical authorization that meets specific requirements. 45 C.F.R. § 164.508(a)(1), (c)(1).

121. "Every application of a text to particular circumstances entails interpretation." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 53 (2012) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness. *Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570, 573 (Tenn. 2015).

Our goal in statutory interpretation is to "ascertain and effectuate the legislature's intent." *Kite v. Kite*, 22 S.W.3d 803, 805 (Tenn. 1997). When a statute's language is unambiguous, we derive legislative intent from the statute's plain language. *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). The words used in the statute should be given their natural, ordinary meaning "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). But, when a statute's language is subject to several interpretations, we also consider the broader statutory scheme, the statute's general purpose, and other sources to ascertain legislative intent. *Wachovia Bank of N.C., N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000).

## A. HEALTH CARE LIABILITY ACT

The trial court dismissed Ms. Clary's complaint based on her noncompliance with the pre-suit notice statute, a requirement of the Health Care Liability Act (the "Act"). *See* Tenn. Code Ann. §§ 29-26-101 to -122 (2012 & Supp. 2016). Tennessee Code Annotated § 29-26-121(a)(1) requires any person with a potential health care liability claim to provide pre-suit notice of the claim to all health care providers who could be named as defendants. *Id.* § 29-26-121(a)(1).[2] The notice shall include a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." *Id.* § 29-26-121(a)(2)(E).[3] The Act specifies that compliance with the pre-suit notice requirement can be established by filing an affidavit with the complaint. *Id.* § 29-26-121(a)(3)(A). If the

---

[2] Tennessee Code Annotated § 29-26-121(a)(1) provides: "[a]ny person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state."

[3] In addition to the HIPPA compliant medical authorization, the pre-suit notice must include the following:

> (A) The full name and date of birth of the patient whose treatment is at issue;
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
> (C) The name and address of the attorney sending the notice, if applicable; [and]
> (D) A list of the name and address of all providers being sent a notice . . . .

Tenn. Code Ann. § 29-26-121(a)(2).

3

pre-suit notice was sent by mail, the affidavit must be accompanied by a copy of the pre-suit notice and a stamped certificate of mailing from the United States Postal Service. *Id.* § 29-26-121(a)(4).

In this case, we are solely concerned with the documentation requirement in subsection (b), which specifies that a complaint asserting a claim for health care liability must include the pre-suit notice required by subsection (a). Specifically, subsection (b) provides as follows:

> [T]he pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

*Id.* § 29-26-121(b).[4]

CRMC argues that the requirement to provide copies of the medical authorizations is mandatory because the Legislature used the commanding word "shall." "To determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012) (quoting 3 Norman J. Singer & J.D. Singer, *Statutes and Statutory Construction* § 57:2 (7th ed. 2008)). In other words, if strict compliance with the provision at issue is "essential to avoid prejudicing an opposing litigant," we construe "shall" as mandatory. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013); *see also Presley v. Bennett*, 860 S.W.2d 857, 860 (Tenn. 1993) ("In general, when determining whether a procedural requirement of a statute is directory or mandatory, the object is to ascertain the legislative intent by consideration of the entire statute, including its nature and purpose, and the consequences that would result from a construction one way or the other.").

Our supreme court has concluded that providing pre-suit notice to potential defendants is the "essence" of the statute and, thus, compliance with the pre-suit notice requirement of subsection (a)(1) is mandatory. *Myers*, 382 S.W.3d at 309. Nothing short

---

[4] CRMC contends that Ms. Clary had to demonstrate extraordinary cause before the court could consider her substantial compliance argument. We disagree. Once Defendants filed their motions to dismiss, the burden shifted to Ms. Clary to show "**either** that [she] complied with the statute[] **or** that [she] had extraordinary cause for failing to do so." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012) (emphasis added). Only if the trial court determines, based on the complaint and any other evidence submitted by the parties, that the plaintiff did not comply with the statute does extraordinary cause become relevant. *Id.* As we have concluded that Ms. Clary substantially complied with the statute, the question of extraordinary cause is irrelevant.

of strict compliance is acceptable. *Id.* But, in the absence of prejudice to the opposing party, substantial compliance with other requirements in the statute is enough to avoid dismissal of the complaint. *See Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015) (allowing substantial compliance with the statutorily prescribed method of service); *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520-21 (Tenn. 2014) (holding substantial compliance with the affidavit requirement was sufficient); *Stevens*, 418 S.W.3d at 554-55 (holding that substantial compliance with HIPAA content regulations for medical authorization could suffice).

The pre-suit notice statute has multiple requirements that "serve related yet ultimately distinct goals." *Stevens*, 418 S.W.3d at 554. The requirement to provide a copy of the medical authorization with the complaint serves to confirm the content of the document that was given to the potential defendants. *See Travis v. Cookeville Reg'l Med. Ctr.*, No. M2015-01989-COA-R3-CV, 2016 WL 5266554, at *7 (Tenn. Ct. App. Sept. 21, 2016) (observing that counsel's inability to provide a copy of the medical authorization sent to the potential defendants left the court unable to resolve the issue of whether the authorization complied with the statute). Here, the content of the medical authorizations is undisputed.

Consistent with our supreme court precedent, we conclude that the documentation requirement of Tennessee Code Annotated § 29-26-121(b) is not mandatory, and substantial compliance is sufficient. *See Hunt v. Nair*, No. E2014-01261-COA-R9-CV, 2015 WL 5657083, at *8 (Tenn. Ct. App. Sept. 25, 2015), *perm. app. denied*, (Tenn. Jan. 21, 2016) (holding substantial compliance with the documentation requirement was sufficient when defendants were not prejudiced by plaintiff's failure to attach copies of the pre-suit notice and medical authorization to the complaint). Ms. Clary timely provided HIPAA-compliant medical authorizations to Defendants with her pre-suit notice, her notice was served in accordance with the statute, and the late-filed exhibits were true and correct copies of the authorizations. Thus, strict compliance with the documentation requirement is not essential to avoid prejudice to Defendants. *See Stevens*, 418 S.W.3d at 554.

The record in this case supports the trial court's finding that Ms. Clary substantially complied with the documentation requirement. *See id.* at 556 ("In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance."). Ms. Clary satisfied all the statutory requirements except for filing copies of the medical authorizations, and she rectified her mistake at an early stage. Defendants suffered no prejudice from the filing delay because they received the authorizations with the pre-suit notice. Allowing Ms. Clary to proceed under these circumstances promotes the judicial goal of disposing of a case on its merits. *See Childress v. Bennett*, 816 S.W.2d 314, 316 (Tenn. 1991) (cautioning courts to be "reluctant to give effect to rules of procedure which

seem harsh and unfair, and which prevent a litigant from having a claim adjudicated upon its merits").

Our conclusion, however, does not resolve this appeal. We next address whether strict compliance with Tennessee Code Annotated § 29-26-121 is required because CRMC is a governmental entity.[5]

## B. SOVEREIGN IMMUNITY

At common law, the doctrine of sovereign immunity protected governmental entities from being sued without consent. *Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996). This protection is preserved in our state constitution, which provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. County and local governments, as arms of the state, also enjoy sovereign immunity. *Sneed v. City of Red Bank*, 459 S.W.3d 17, 23-24 (Tenn. 2014).

With the passage of the Tennessee Governmental Tort Liability Act ("the GTLA"), the Legislature reaffirmed and extended the doctrine of sovereign immunity for counties, municipalities, and other local governmental agencies and then waived immunity for injuries arising from specified circumstances. Tenn. Code Ann. §§ 29-20-201 to -205 (2012); *Sneed*, 459 S.W.3d at 24-25; *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The GTLA specifically waives governmental immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment" except if the injury arises out of nine enumerated exceptions. Tenn. Code Ann. § 29-20-205. A health care liability action against a governmental entity falls within the waiver of governmental immunity in the GTLA. *Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 42-43 (Tenn. 2013).

We construe statutes waiving governmental immunity strictly because they are in derogation of the common law, and this "rule of construction has been expressly incorporated" into the GTLA. *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995); Tenn. Code Ann. § 29-20-201(c) ("[A]ny claim for damages must be brought in strict compliance with the terms of this chapter."). Under this rule of construction, we will not apply other statutes to vary or extend the GTLA in the absence of clear evidence that the Legislature intended such a result. *See Cunningham*, 405 S.W.3d at 45-46 (holding that the tolling provision of the Medical Malpractice Act, the precursor to the Health Care Liability Act, could not be applied in actions against governmental entities); *Lynn v. City*

---

[5] CRMC is a private act hospital operated by the City of Cookeville through the Cookeville Regional Medical Center Authority and established under the authority of the Private Act Hospital Authority Act of 1996. *See* Tenn. Code Ann. §§ 7-57-601 to -604 (2015). Ms. Miller is a governmental employee. *See* Tenn. Code Ann. § 29-20-102(2) (Supp. 2016).

6

*of Jackson*, 63 S.W.3d 332, 337 (Tenn. 2001) (holding that the general savings statute was inapplicable to GTLA claims).

But allowing substantial compliance with the documentation requirement under the circumstances presented here does not conflict with our duty to strictly construe the GTLA. "[G]overnmental entities may prescribe the terms and conditions under which they consent to be sued, including when, in what forum, and in what manner suit may be brought." *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996) (citations omitted). Even though we strictly construe the immunity waiver in the GTLA, when faced with express legislative intent to apply the procedural requirements of another statute to governmental entities, we must give effect to the legislative intent. *Harper v. Bradley Cty.*, 464 S.W.3d 615, 622-23 (Tenn. Ct. App. 2014). Strict construction should never be used to "defeat the obvious intention of the legislature." *State v. Netto*, 486 S.W.2d 725, 728 (Tenn. 1972).

Our courts have uniformly held that by including governmental entities within the definitions of "health care liability action" and "health care provider," the Legislature clearly expressed its intent for the "procedural requirements and the corresponding benefits" of the Act to apply to claims against governmental entities.[6] *Wade v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 62 (Tenn. Ct. App. 2015), *perm. app. denied*, (Tenn. May 19, 2015); *see also Banks v. Bordeaux Long Term Care*, 465 S.W.3d 141, 146 (Tenn. Ct. App. 2014); *Harper*, 464 S.W.3d at 620-21. Contrary to CRMC's position, we find no indication in the Act that the Legislature intended for courts to apply its provisions differently based on whether the health care provider was a governmental entity or not. The inclusion of governmental entities in the Act's definitions supports the proposition that governmental health care providers are to be treated the same as non-governmental ones. *Wade*, 469 S.W.3d at 62; *see also Doyle v. Frost*, 49 S.W.3d 853, 859-60 (Tenn. 2001) (indicating that an amendment to the comparative fault joinder statute to provide that it applied to suits involving governmental entities was sufficient evidence of legislative intent to treat governmental entities just like other parties for purposes of joinder). Thus, we conclude that the Act should be applied uniformly to all health care providers even when the defendant is a governmental entity.[7]

---

[6] "Health care liability action" is defined to include claims "against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). The Act also defines "health care provider" to include "those physicians and nurses employed by a governmental health facility." *Id.* § 29-26-101(a)(2)(D).

[7] Although inapplicable here, we note that "no provision of [the Act] shall apply to claims against the state to the extent that such provision is inconsistent with or conflicts with the Tennessee Claims Commission Act[.]" Tenn. Code Ann. § 29-26-101(c).

## III.

For the foregoing reasons, we reverse the decision of the circuit court dismissing the complaint with prejudice and remand for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE