FILED
01/29/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2024 Session

## VIRGINIA CURTIS EX REL. BRUCE ALLEN CURTIS v. TIFFANY L. SHARP ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-287-21          William T. Ailor, Judge**

———————————————————

**No. E2023-01583-COA-R3-CV**

———————————————————

This appeal arises from the dismissal of a health care liability action. The plaintiff's husband passed away after a complication that occurred during a medical procedure. The plaintiff provided pre-suit notice of her claim to five health care providers but ultimately filed suit against only three of the providers. The plaintiff voluntarily dismissed her initial action, but then she re-filed it within a year. The defendants filed a motion to dismiss the re-filed suit, alleging that the plaintiff failed to substantially comply with the requirements of Tennessee Code Annotated section 29-26-121. The trial court granted the motion to dismiss after finding that the plaintiff failed to substantially comply with section 29-26-121(a)(2)(E) due to limiting language included in HIPAA authorizations she had provided to the defendants. The trial court also found that the plaintiff failed to substantially comply with section 29-26-121(a)(4), which requires plaintiffs to file certain documentation with their complaint. We hold that the trial court erred in finding that the plaintiff failed to comply with section 29-26-121(a)(4) but did not err in finding that the plaintiff failed to comply with section 29-26-121(a)(2)(E). Accordingly, the judgment of the trial court is affirmed in part and reversed in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

E. Michael Brezina, III and J. Tucker Montgomery, Knoxville, Tennessee, for the appellant, Virginia Curtis.

Heidi Barcus and Meagan Collver, Knoxville, Tennessee, for the appellees, Tiffany L. Sharp and American Anesthesiology of Tennessee, P.C.

# OPINION

## BACKGROUND

The plaintiff, Virginia Curtis ("Plaintiff"), is the surviving spouse of the decedent, Bruce Allen Curtis. Mr. Curtis passed away after aspirating stomach contents into his airway during a colonoscopy performed on November 14, 2019. The colonoscopy occurred at Parkwest Medical Center ("Parkwest"). Randall M. Devault, M.D. ("Dr. Devault") was Mr. Curtis's anesthesiologist. In addition, certified registered nurse anesthetist, Tiffany L. Sharp, was one of Mr. Curtis's providers. Both Dr. Devault and Ms. Sharp were employed by American Anesthesiology of Tennessee, P.C. ("AAT"). Ms. Sharp and AAT are hereafter referred to as "Defendants."

In early August 2020, Plaintiff sent pre-suit notice pursuant to Tennessee Code Annotated section 29-26-121 ("Section 121") to five providers: Defendants; Dr. Devault; North American Partners in Anesthesia, LLP ("NAPA"); and MEDNAX Services, Inc. ("MEDNAX"). As required by Section 121(a)(2)(D), this 2020 pre-suit notice included a list of all the providers to whom the notice was being sent. Attached to the notice were HIPAA authorizations that purported to permit each of these noticed providers to obtain complete medical records from each other noticed provider. However, the HIPAA authorizations included the following limiting language (the "Limiting Language"):

> Any conferences, formal or informal, [of[1]] any type or oral communication with [the provider receiving the authorization], or any of [his/her/its] representatives is <u>absolutely</u> forbidden.

On December 8, 2020, Plaintiff filed a complaint against Defendants and Dr. Devault (the "Original Suit") in the Knox County Circuit Court (the "trial court").[2] Plaintiff attached the 2020 pre-suit notice materials sent to Defendants and Dr. Devault to the complaint filed in the Original Suit but failed to attach the HIPAA authorizations sent to AAT allowing them to obtain records from NAPA and MEDNAX. Plaintiff voluntarily dismissed the Original Suit, and an order of dismissal was entered on March 12, 2021.

On July 7, 2021, Plaintiff sent a new set of pre-suit notices to Defendants and Dr. Devault. NAPA and MEDNAX were not served with the 2021 pre-suit notice. Plaintiff

---

[1] The HIPAA authorizations actually read ". . . conferences, formal or informal, or any type or oral communication . . ."; however, the parties agree that the first "or" is a typographical error and is intended to say "of."

[2] Plaintiff's claim against Dr. Devault was subsequently dismissed with prejudice by agreement of the parties, and he is not a party to this appeal. Despite having sent them the 2020 pre-suit notice, Plaintiff has never filed suit against either NAPA or MEDNAX.

attached to the 2021 pre-suit notice HIPAA authorizations that contained the same Limiting Language that had been included in the 2020 HIPAA authorizations. Plaintiff filed her complaint in the instant case (the "Refiled Suit") on November 16, 2021, and attached all of the 2021 pre-suit notice materials to the complaint.

On December 29, 2021, Defendants filed a motion to dismiss the Refiled Suit due to Plaintiff's failure to substantially comply with the Health Care Liability Act pre-suit notice requirements in the Original Suit by

> failing to provide the claimant's address; failing to provide HIPAA compliant medical authorizations allowing [AAT] to obtain medical records from all other providers being sent notice; failing to provide HIPAA compliant medical authorizations allowing Defendants to disclose and use their own records to fully evaluate case pre-suit; failing to attach required documentation evidencing service of pre-suit notice on Defendants to Complaint; failing to provide [] Defendants with HIPAA compliant medical authorizations allowing them to fully evaluate this case due to the limiting language contained therein; … failing to send pre-suit notice to [Ms. Sharp]'s specific address listed on the Tennessee Department of Health's website; failing to send pre-suit notice to [Ms. Sharp]'s current business address; … and failing to provide pre-suit notice for Plaintiff's loss of consortium claim.

Defendants argue that, because the 2020 pre-suit notice and filings in the Original Suit were not substantially compliant with the requirements of Section 121, Plaintiff is not entitled to the statutory extension of her original statute of limitations. Therefore, they argue, Plaintiff's complaint in the Original Suit was not timely filed and could not have been "saved" by the saving statute. Accordingly, they argue, the Refiled Suit is also untimely and must be dismissed.

On March 11, 2022, Plaintiff filed a response and memorandum of law in opposition to Defendants' motion to dismiss. Plaintiff also filed a document titled "Late Filed Exhibit 1 to the Affidavit of J. Tucker Montgomery Attorney for the Plaintiff" and attached the 2020 HIPAA authorizations served upon AAT allowing it to obtain records from NAPA and MEDNAX.

Following a hearing on Defendants' motion to dismiss, the trial court entered an order granting the motion on October 12, 2023. In relevant part, the trial court found

> that the Plaintiff substantially complied with the requirements of [Section] 121(a)(2)(A)-(D) in the [Original Suit]. However, the [trial court found] that the Plaintiff failed to comply with the requirements of [Section] 121(a)(2)(E), which requires that the notice include "a HIPAA compliant medical

authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent notice."

Specifically, the [trial court found] the Plaintiff did not substantially comply with the requirements of [Section] 121(a)(2)(E). The Plaintiff included the [Limiting Language] in every HIPAA Authorization form sent to all potential defendants prior to the filing of the [Original Suit] …. [The trial court held] that this "limiting language" prejudiced the Defendants by prohibiting the [D]efendants from "fully investigating their settlement abilities with regard to the claims" as it relates to the other [D]efendants before the [O]riginal [S]uit was filed in 2020. The [trial court] further [found] the Plaintiff did not substantially comply with the requirements of [Section] 121(a)(4), by not attaching documentation to the Complaint in the [Original Suit] demonstrating that [AAT] was actually served with compliant HIPAA authorizations allowing it to obtain medical records from two other providers sent pre-suit notice, [MEDNAX] and [NAPA] prior to the filing of the [Original Suit] in 2020.[ ] It is thus [the trial court]'s ruling that based on these failures, Plaintiff [was] not entitled to the 120-day extension provided for under [Section] 121(c). Therefore, the [Original Suit] was time barred under Tennessee Code Annotated Section 29-26-116(a)(1). The Savings Statute, codified at Tennessee Code Annotated Section 28-1-105(a), does not apply in the [Refiled Suit] because the [Original Suit] was time-barred. Consequently, the [Refiled Suit] is time barred.

(Internal footnote omitted).  Plaintiff appeals this dismissal.

## ISSUES

Plaintiff raises four issues on appeal, which we consolidate and restate as:

1.      Whether the trial court erred in its determination that Plaintiff failed to substantially comply with Section 121(a)(4) by failing to attach two of the HIPAA authorizations to the complaint in the Original Suit.

2.      Whether the trial court erred in its determination that Plaintiff failed to substantially comply with Section 121(a)(2)(E) by including the Limiting Language in the 2020 HIPAA Authorizations.

## STANDARD OF REVIEW

The trial court dismissed Plaintiffs' complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6).  *See Hayward v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 680

S.W.3d 252, 259 (Tenn. Ct. App. 2023) ("[T]he proper avenue to challenge a plaintiff's compliance with the pre-suit notice requirement in Section 121 is by a Tenn. R. Civ. P. 12.02(6) motion to dismiss."). "A trial court's grant of a motion to dismiss, filed pursuant to Tenn. R. Civ. P. 12.02(6), is a question of law, which we review *de novo* with no presumption of correctness." *Id.* (citing *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015)).

## DISCUSSION

### *a.*

Health care liability actions in Tennessee are subject to a one-year statute of limitations. Tenn. Code Ann. § 29-26-116(a)(1). However, a plaintiff who gives pre-suit notice of her claim to a health care provider as required by Section 121 is entitled to a 120-day extension of the statute of limitations applicable to the noticed provider. Tenn. Code Ann. § 29-26-121(c). Moreover, under Tennessee's saving statute, a plaintiff who voluntarily dismisses a health care liability action without prejudice is entitled to re-file her action within one year of the dismissal so long as the initial action was timely filed. *See* Tenn. Code Ann. § 28-1-105(a).

For this Court to determine whether Plaintiff's Refiled Suit was timely filed, we must first determine whether she complied with the pre-suit notice requirements of Section 121. If she did not comply with those requirements, she is not entitled to the 120-day extension of her statute of limitations, upon which she relies to argue that the Original Suit was timely filed. *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 337 (Tenn. 2020). If the Original Suit was not timely filed, Plaintiff is not entitled to the benefit of the saving statute, upon which she relies to argue that the Refiled Suit was timely filed. *Id*. In other words, if Plaintiff did not comply with the requirements of Section 121 before she filed the Original Suit, then the Refiled Suit is barred by the statute of limitations.

### *b.*

We turn first to Plaintiff's argument that the trial court erred in finding that she did not substantially comply with the requirements of Section 121(a)(4). As relevant to this appeal, Section 121 requires:

> (a)(1) Any person . . . asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> (2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

* * *

(B) Mailing of the notice:

* * *

(4) Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. . . .

* * *

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

Tenn. Code Ann. § 29-26-121. "The content and affidavit requirements of [Section 121(a)(4)] are not mandatory, but directory, and can be achieved through substantial compliance." *Arden v. Kozawa*, 466 S.W.3d 758, 763 (Tenn. 2015) (citing *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014)). Likewise, "the documentation requirement of [Section 121(b)] is not mandatory, and substantial compliance is sufficient." *Clary v. Miller*, 546 S.W.3d 101, 106 (Tenn. Ct. App. 2017) (citing *Hunt v. Nair*, No. E2014-01261-COA-R9-CV, 2015 WL 5657083, at *8 (Tenn. Ct. App. Sept. 25, 2015)).

"In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 556 (Tenn. 2013). The Tennessee Supreme Court explained the prejudice requirement as follows:

> [P]rejudice is not a separate and independent analytical element; rather, as *Stevens* explained, prejudice is a consideration relevant to determining whether a plaintiff has substantially complied. Prejudice, or the absence of prejudice, is especially relevant to evaluating the extent and significance of the plaintiff's noncompliance. If a plaintiff's noncompliance with Section 121 frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121. On the other hand, if the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied.

*Martin*, 600 S.W.3d at 333–34 (internal citations omitted). "The requirement to provide a copy of the medical authorization with the complaint serves to confirm the content of the document that was given to the potential defendants." *Clary*, 546 S.W.3d at 106.

The trial court found that Plaintiff failed to substantially comply with the requirements of Section 121(a)(4) by failing to attach to the complaint in the Original Suit the 2020 HIPAA authorizations purporting to permit AAT to obtain records from MEDNAX and NAPA (the "Late Filed Authorizations"). Plaintiff argues that her failure to attach the Late Filed Authorizations did not frustrate or interfere with the purposes of Section 121(a)(4) because neither MEDNAX nor NAPA actually had any records to be obtained. Defendants respond that the delay between the filing of the Original Suit and the filing of the Late Filed Authorizations in the Refiled Suit was too long to meet the substantial compliance requirement. Specifically, they argue:

. . . even the first time [Plaintiff] filed the missing HIPAA authorizations from the first case in the present case, on March 11, 2022, there were no certificates of mailings with them, as required by [Section] 121(a)(4). It was not until the day of the hearing [on Defendants'] Motion to Dismiss on August 23, 2023, that such documentation was filed. [Plaintiff] has cited no authority that such significant delays from when the original case was filed on December 8, 2020 to August 23, 2023, and filing it in the refiled case, but not the original case, constitutes substantial compliance with either [Section] 121(a)(4) or [Section] 121(b), nor are these Defendants aware of any. Therefore, the [trial court appropriately] held the [Plaintiff] failed to substantially comply with [Section] 121(a)(4). *Travis* [*v. Cookeville Reg'l Med. Ctr.*], No. M2015-01989-COA-R3-CV, [2016 WL 5266554, (Tenn. Ct. App. Sept. 21, 2016)].

(Internal citations to record omitted). However, the deficiencies in *Travis*, upon which Defendants rely, far outweigh Plaintiff's Section 121(a)(4)-related deficiencies in this case.

In *Travis*, the health care provider defendants filed motions to dismiss the complaint due to the plaintiff's purported failure to comply with the requirements of Section 121(b), failure to state in the pleadings that he complied with Section 121(a), and failure to provide documentation specified in Section 121(a)(2). 2016 WL 5266554, at *2. Less than a month later, the plaintiff filed an affidavit of his counsel stating that the plaintiff had complied with the requirements of Section 121 and attaching copies of certified mail receipts for each defendant, return receipts for all but one of the defendants, the pre-suit notice letters sent to the defendants, and unsigned copies of the HIPAA authorizations allegedly sent to the defendants. *Id.* The plaintiff asserted that he had signed the HIPAA authorizations before sending them to the defendants but had not retained copies of the signed authorizations for his records. *Id.* The trial court dismissed the action due to the plaintiff's failures to comply with Section 121, holding that these failures could not "be remediated by amendment." *Id.* at *3. Ultimately, this Court affirmed the trial court's dismissal, noting that the plaintiff had not met his burden to show he had complied with Section 121 "because he failed to demonstrate that he complied with the requirement that written, pre-suit notice include '[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.'" *Id.* at *9 (quoting Tenn. Code Ann. § 29-26-121(a)(2)(E)). Although the Court noted that the plaintiff's "procedural shortcomings were numerous," it was ultimately his failure to retain a copy of the signed HIPAA authorization form that the Court found to be "significant." *Id.* For that reason, the Court held that the plaintiff failed to substantially comply with Section 121(b). *Id.*

This case is distinguishable from *Travis* in that the Late Filed Authorizations in this case were signed and – except as discussed further below with respect to the Limiting

Language – otherwise satisfied the requirements of HIPAA set forth at 45 C.F.R. § 164.508(c)(1). Importantly, AAT does not deny having received the Late Filed Authorizations as part of the 2020 pre-suit notice served upon it. Defendants' only objection with respect to Plaintiff's compliance with Section 121(a)(4) is that the required documentation was late-filed with the trial court. However, Defendants are unable to show how they were prejudiced by this late filing. When a plaintiff timely provides HIPAA-compliant medical authorizations with her pre-suit notice, when the pre-suit notice is served in accordance with Section 121, and when the late-filed exhibits are true and correct copies of the authorizations, the defendant suffers no prejudice from the filing delay. *Clary*, 546 S.W.3d at 107. Because Defendants suffered no prejudice, the trial court erred in finding that Plaintiff failed to substantially comply with Section 121(a)(4), and we reverse that portion of the judgment.

*c.*

We next turn to Plaintiff's argument that the trial court erred in finding that Plaintiff did not substantially comply with the requirements of Section 121(a)(2)(E) due to the Limiting Language included in the HIPAA authorizations. Section 121(a)(2)(E) requires a plaintiff to provide "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Plaintiff argues that the HIPAA authorizations meet this requirement and that the Limiting Language therein "merely reserves [P]laintiff's existing statutory rights under Section []121(f) and Tennessee law."[3] Specifically, Plaintiff argues that, pursuant

---

[3] Section 121(f) provides, in relevant part:

(1)    Upon the filing of any "healthcare liability action," . . . the named . . . defendants may petition the court for a qualified protective order allowing the . . . defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101. Such petition shall be granted under the following conditions:

* * *

(2)    Any healthcare provider's disclosure of relevant information in response to a court order under this section, including, but not limited to, protected health information, opinions as to the standard of care of any defendant, compliance with or breach of the standard, and causation of the alleged injury, shall be deemed a permissible disclosure under Tennessee law.

(3)    Nothing in this part shall be construed as restricting in any way the right of a defendant or defendant's counsel from conducting interviews outside the presence of claimant or claimant's counsel with the defendant's own present or former employees, partners, or owners concerning a healthcare liability action.

to Section 121(f), Defendants "simply had no right to request – much less conduct – a pre-suit *ex parte* meeting with any of [Mr. Curtis's] treating health care providers" until after Plaintiff's action was filed and they obtained a qualified protective order allowing them to do so. Plaintiff also argues at length that the Limiting Language did not actually prejudice Defendants because MEDNAX and NAPA never had any records to produce and because HIPAA allows each provider to use its own records to obtain legal services. Conversely, Defendants argue that they are prejudiced by the Limiting Language because it

> prohibit[s] [Defendants] and/or their counsel from obtaining records or engaging in any settlement negotiations; [is] broad enough to forbade [Defendants] from requesting medical records from any provider sent notice, limiting their ability to discuss with their attorneys any medical records received pursuant to those HIPAA authorizations, to pursue settlement negotiations, and/or preventing the providers from utilizing those medical records to send them out to an expert for review.

Section 121 enables noticed health care providers to "investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018) (citing *Foster v. Chiles*, 467 S.W.3d 911, 915 (Tenn. 2015)). This "benefits the parties by promoting early resolution of claims, which also serves the interest of judicial economy." *Id.*

Each HIPAA authorization sent by Plaintiff states that it "is a limited medical authorization" and includes the Limiting Language "<u>absolutely</u>" forbidding "[a]ny conferences, formal or informal, [of] any type or oral communication with" the noticed providers "or any of [their] representatives[.]" Plaintiff argues that the Limiting Language is "narrowly tailored . . . [to] preserv[e] only [Plaintiff's] rights under Tennessee law." We do not agree. If Plaintiff's only intent was to preserve her already existing rights under Section 121(f), she could have referenced that statutory section in the HIPAA authorization. She did not. Instead, the Limiting Language leaves a reasonable person unable to determine what is permitted by the HIPAA authorization. Both AAT and Ms. Sharp received authorizations containing the Limiting Language, which could also be interpreted as prohibiting AAT from orally communicating with its employee, Ms. Sharp, about Plaintiff's claim. As the Tennessee Supreme Court has emphasized, and as the trial court in this case recognized, "[t]he penalties imposed upon covered entities that wrongfully disclose or obtain private health information in violation of HIPAA are . . . extremely severe, with such entities facing punishment of up to $50,000 per offense and/or imprisonment of up to one year for non-compliance." *Martin*, 600 S.W.3d at 332 (quoting *Stevens*, 418 S.W.3d at 555 n.6). For this reason, "[a]lthough defendants must explain how they were prejudiced by noncompliance, defendants need not 'test' incomplete and facially noncompliant medical authorizations." *Id.* at 334.

In sum, the Limiting Language, which Plaintiff chose to include in the HIPAA authorizations, can be interpreted to significantly limit a provider's ability to communicate as may be necessary to investigate the claim or evaluate settlement opportunities. Further, providers are not required to risk facing substantial penalties by "testing" the language. The Limiting Language frustrates the purpose of Section 121(a)(2)(E). As such, the trial court did not err in finding that Plaintiff failed to substantially comply with Section 121(a)(2)(E), and we affirm the trial court's dismissal of the Refiled Suit.

## CONCLUSION

For all these reasons, we reverse in part and affirm in part the judgment of the Circuit Court for Knox County. This case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the appellant, Virginia Curtis, and one-half to the appellees jointly and severally, Tiffany L. Sharp and American Anesthesiology of Tennessee, P.C., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE